**Elizabeth RUDLOFF, Appellee,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 27, 2002.

Filed Sept. 11, 2002.

James C. Haggerty, Philadelphia, for appellant.

Jonathan Wheeler, Philadelphia, for appellee.

Before: DEL SOLE, P.J., FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, ORIE MELVIN, LALLY-GREEN, KLEIN, BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Nationwide Mutual Insurance Company appeals from the order that granted Elizabeth Rudloff's (Appellee) Petition to Confirm Arbitration Award, which award was $77,500 for underinsured motorist (UIM) benefits in Appellee's favor and against Nationwide. The order also denied Nationwide's Petition to Vacate and/or Modify the Award. Nationwide claims that the trial court erred in determining that the household exclusion in its insurance policy was void as against the public policy of this Commonwealth. Upon the facts of this case, we conclude that the household exclusion in Nationwide's policy does not violate public policy and, therefore, the exclusion is a valid bar to Appellee's claim for UIM benefits from Nationwide. Accordingly, we reverse.

¶ 2 This case arises from a multiple vehicle accident during which Appellee was operating a vehicle that she owned. Appellee suffered serious injuries when another vehicle struck her vehicle from behind. The insurance benefits available under the tortfeasors' policies were insufficient to compensate Appellee for her damages and, therefore, Appellee sought to collect UIM benefits under her automobile insurance policy with Hanover Insurance Company.[1] Ostensibly, Hanover denied Appellee's claim for UIM benefits, and the matter proceeded to arbitration. The arbitration resulted in an award of $77,500 in Appellee's favor and against Hanover. Neither party's brief indicates whether Hanover paid this amount, or any part thereof, to Appellee.

¶ 3 However, what is clear is that Appellee subsequently sought to collect $77,5000 through an automobile insurance policy that her father, Steven Rudloff, carried with Nationwide. Appellee is not a named insured under her father's policy although, as a relative[2] residing in his household, she is entitled to UIM benefits under the policy.[3] The policy provides UIM benefits of $100,000. Nationwide denied Appellee's claim for benefits on the basis of a household exclusion that states:

**COVERAGE EXCLUSIONS**

¶ 4 This coverage does not apply to:

. . .

4. Bodily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for underinsured motorist coverage under this policy; nor to bodi-

1. UIM coverage is defined as coverage "for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c).

2. The Nationwide policy defines "relative" as "one who regularly lives in your household, related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household." Reproduced Record (R.R.) at 150a.

3. The policy provides UIM coverage for the named insured and relatives. R.R. at 287a.

ly injury from being hit by any such motor vehicle.

R.R. at 289a.

¶ 5 This matter also proceeded to arbitration, and the arbitrators found that the foregoing exclusion was invalid as against public policy as it applies to the facts of this case. The arbitrators awarded $77,500 to Appellee. Appellee filed a Petition to Confirm Arbitration Award in the Court of Common Pleas, and Nationwide filed a Petition to Vacate and/or Modify the Award. The court granted Appellee's petition and denied Nationwide's petition. Nationwide then filed this appeal raising one question for our review:

> Did the Trial Court err in refusing to enforce a clear and unambiguous household exclusion in a personal auto policy where the plaintiff, who was operating her own insured vehicle, is seeking to recover underinsured motorist benefits under a policy issued to her father which provided unstacked underinsured motorist coverage for a vehicle not involved in the accident?

Brief for Appellant at 3.

■ ¶ 6 The Nationwide policy expressly required arbitration under the Pennsylvania Arbitration Act of 1927 for coverage disputes arising under the policy. "Since the insurance policy in the instant case expressly provides for arbitration pursuant to the Arbitration Act of 1927, the standard of review applicable in a proceeding to modify or vacate an arbitration award is that set forth at Section 7302(d) of the 1980 Arbitration Act[.]" *Nationwide Ins. Co. v. Calhoun*, 430 Pa.Super. 612, 635 A.2d 643, 646 (1993). Section 7302(d) states:

> (2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and

is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d). When we review a trial court's decision to affirm, modify or vacate an arbitration award, this Court may reverse only for an abuse of discretion or an error of law. *See Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1238 (Pa.Super.2001).

¶ 7 Both the arbitrators and the trial court in this case concluded that the exclusion in question is invalid under the circumstances as it violates public policy. Neither party claims that the exclusion is ambiguous. Nor do the parties dispute that the express language of the exclusion operates to bar Appellee's recovery of UIM benefits. Therefore, the narrow question of law before us is whether the trial court erred in determining that the household exclusion was void as against the public policy of our Commonwealth upon the facts of this case.

■ ¶ 8 Recently, we were required to make a similar determination in *Old Guard Ins. Co. v. Houck*, 801 A.2d 559 (Pa.Super.2002). In *Old Guard*, we surveyed our Supreme Court's recent rulings on the household exclusion and noted that since 1994, when the Court decided *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), it has " 'expanded the applicability of the household exclusion' in three subsequent cases." *Old Guard*, 801 A.2d at 563 (quoting *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1009 (1998) (unanimous decision)) (citing *Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995); *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994)). In *Paylor*, the Court stated that the household exclusion is generally invalid as against the policy of the Motor Vehicle

Financial Responsibility Law (MVFRL) 75 Pa.C.S. §§ 1701–1799.7

Allowing the "family car exclusion" to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL.

*Paylor,* 640 A.2d at 1240. However, in *Old Guard,* we concluded that the subsequent decisions of our Supreme Court culminating in *Eichelman* indicated that the court had shifted its analysis of the validity of a household exclusion to focus on contract law and public policy:

Conspicuously absent from the Supreme Court's analysis in *Eichelman* is any mention of the presumption that the household exclusion was invalid as against public policy and that an exception to this rule existed for cases in which a claimant sought to convert UIM benefits into liability benefits. Instead, the court stated "that **a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy [and] this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract."**

*Old Guard,* 801 A.2d at 566 (quoting *Eichelman,* 711 A.2d at 1008) (emphasis added). We remain with our holding in *Old Guard* that in the absence of a violation of public policy, a clear and unambiguous household exclusion is a valid mechanism for limiting UIM coverage within an insurance policy. *Accord Burstein v. Prudential Property and Cas. Ins. Co.,* 801 A.2d 516 (Pa.2002) (wherein our Supreme Court upheld a relatively similar exclusion on the basis that the exclusion did not violate public policy). Accordingly, a party seeking to circumvent the household exclusion must articulate a public policy that would be contravened by enforcement of the exclusion under the facts of the case.

¶ 9 Nationwide cites to our Supreme Court's decision in *Paylor* in support of the argument that the household exclusion in this case does not violate the public policy underlying the MVFRL. In *Burstein,* our Supreme Court reiterated the public policy underlying the MVFRL that it had previously delineated in *Paylor:*

The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. **The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL.** This reflects the General Assembly's departure from the principle of maximum feasible restoration embodied in the now defunct No–Fault Act.

*Burstein,* 801 A.2d at 520 (quotation marks and footnote omitted) (emphasis added) (quoting *Paylor,* 640 A.2d at 1235). The court further noted that "[w]hile we recognize that other public policies may underlie the MVFRL, the 'legislative concern for the spiralling consumer cost of automobile insurance' is its dominant and overarching public policy." *Burstein,* 801 A.2d at 520 n. 3 (quoting *Paylor* 640 A.2d at 1235). Nationwide argues that the exclusion is consistent with the foregoing public policy because the insurance policy is a contract wherein Nationwide agreed to underwrite and insure the vehicle owned by Steven Rudloff in exchange for a premium in an amount sufficient to cover the risk associated with the use of that vehicle. Nationwide argues further that it did not agree to underwrite the risk associated with the use of Appellee's vehicle, nor did it collect a

premium for such risk. Consequently, Nationwide claims that the exclusion operates to limit its risk exposure to that contracted for in the insurance policy which in turn controls premium rates.

¶ 10 The scope of the household exclusion in this case is narrow. As stated above, while Appellee is not a named insured in the Nationwide policy, she is nonetheless entitled to UIM benefits as a relative residing in her father's household. Thus, were Appellee to have suffered her injuries while occupying or operating a vehicle owned by a friend, then she would have been entitled to UIM benefits under Nationwide's policy. By virtue of her status as an insured, the UIM benefits followed Appellee to almost any vehicle that she could have occupied or operated. Nationwide contracted for this risk when it insured her father's vehicle. The exclusion only shields Nationwide from the risk associated with Appellee's operation of a vehicle that she or a relative within the household owns and that is not insured for UIM coverage with Nationwide.

¶ 11 The Nationwide policy covered Appellee's father's vehicle and provided him with UIM coverage, as well as any relative residing in his household who operated or occupied the vehicle. Furthermore, the policy also provided father and his relatives with UIM coverage if they suffered injuries while occupying or operating another person's vehicle. The household exclusion, however, limits this coverage in cases where the father or relative own the vehicle and yet have not insured it for UIM coverage with Nationwide. While Nationwide underwrote the risk associated with father or his relatives occupying or operating another vehicle *which he or a relative within his household did not own,* this risk is negligible when compared to the risk associated with Appellee operating or occupying the vehicle that *she owned.* The difference in these risks derives from the fact that it is generally assumed that the occasions on which a person occupies or operates a vehicle that he or she does not own are slight when compared to the occasions on which a person occupies or operates a vehicle that he or she owns, because the vehicle that a person owns is normally that person's primary source of transportation.

¶ 12 Nationwide articulates this argument in terms of how it normally determines risk for UIM coverage based on the number of vehicles insured:

> Insurance premiums are premised upon anticipated risk. An insurer determines this risk, in part, upon the number of vehicles insured. Increasing the number of covered vehicles dramatically increases the risk and, thus, premiums. In this case, the household exclusion eliminates that risk. Premiums are set with the elimination of that risk in mind. Disregarding the household exclusion thereby materially changes the risk and the necessary premium structure.

Brief for Appellant at 21 n. 6. Thus, an insurer will logically demand higher premiums for the greater anticipated risk associated with providing insurance that extends UIM coverage to insureds while operating or occupying vehicles which they or a relative within the household own and yet are not insured for UIM coverage under the insurer's policy.

¶ 13 Another facet of this risk analysis is the process of weighing the known factors versus the unknown factors. Clearly, an insurer will not have every relevant fact known to it when it decides to underwrite any particular risk and, therefore, insurers invariably underwrite risks that are dependent on some unknown factors. But an insurer will attempt to base its premium on an anticipated risk composed of the known factors such as the age of the insured, the type of the vehicle, and the

insured's driving record. The household exclusion in this case permits Nationwide to eliminate its exposure to an unknown factor, i.e., the number of cars owned by members of the household and not insured with Nationwide. Were Nationwide not permitted to limit its risk exposure by means of a household exclusion, then it would surely demand higher premiums to insure against the expanded risk.[4]

¶ 14 As our Supreme Court recently stated in *Burstein:*

> In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.
>
> . . .
>
> Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle. The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.

*Burstein,* 801 A.2d at 520–21.

¶ 15 To illustrate this point, one need only consider the situation where Nationwide insures a person living in a household wherein several relatives reside. Assuming that Nationwide provides the same UIM coverage that it provided in Appellee's father's policy, each relative residing within the household would also receive UIM coverage under the policy. If each relative owns a vehicle, then there is a greater risk because there are multiple vehicles, and each relative will more frequently operate or occupy a vehicle that he or she owns than a vehicle that he or she does not own. Without a valid household exclusion, Nationwide would have unwittingly underwritten a risk that is substantially greater than the risk for which it collected a premium. Nationwide would be responsible for providing UIM benefits to each relative if he or she were to be injured while driving his or her own car although Nationwide only collected a premium to insure against the risk associated with the use of the one vehicle owned by the named insured. Although Nationwide also contracted for the risk of providing UIM coverage to the named insured and the relatives, it did not contract for the far greater risk of providing UIM coverage to each relative in those relatives' regular use of the vehicles that they own.

¶ 16 Our Supreme Court addressed a similar issue in *Eichelman* when it stated:

> Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling costs of automobile insurance in the Commonwealth. If appellant's position were ac-

---

**4.** Indeed, it is questionable whether it is practical for an insurer to track the number of vehicles in the named insured's household that are not insured with the insurer.

cepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) **since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage.** Thus, allowing the "household exclusion" language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL.

*Eichelman,* 711 A.2d at 1010. In accord with our Supreme Court's decisions in *Burstein* and *Eichelman,* we conclude that enforcement of the household exclusion in this case furthers the public policy underlying the MVFRL.

¶ 17 Appellee contends that the "fact that Ms. Rudloff did not purchase [UIM] coverage from Nationwide does not present a public policy consideration which warrants enforcement of the household exclusion." Brief for Appellee at 12. Again, we reiterate that it is the party seeking to circumvent a household exclusion that must articulate a public policy that would be violated by enforcement of the exclusion. *See Burstein,* 801 A.2d at 519; *Eichelman,* 711 A.2d at 1008. However, Appellee does advance an argument that the household exclusion in this case violates purported public policies other than the stated policy underlying the MVFRL discussed above.

¶ 18 First, Appellee argues that enforcement of the household exclusion in this case is against public policy because it "places a restraint on a resident relative's ability to purchase underinsured motorist coverage from an insurance company other than Nationwide" and "penalizes [Appellee] simply because she did not purchase automobile insurance from Nationwide." Brief for Appellee at 11. In point of fact, the household exclusion in this case has no such restraining effect. If a relative within Appellee's father's household desired to insure a vehicle that he or she owned with UIM coverage, then the relative was at liberty to do so. That Appellee makes this argument is rather incredible when one considers that Appellee in fact purchased UIM coverage for the vehicle that she owned from Hanover Insurance Company. Nor does the household exclusion penalize Appellee for making that choice because Nationwide's policy still provided Appellee with UIM coverage even though she purchased UIM coverage from Hanover, but Nationwide's coverage did not extend to Appellee's operation or occupation of her vehicle. Thus, we find this argument without merit.

¶ 19 Next, Appellee argues that the fact she purchased UIM coverage from Hanover somehow sets this case apart from *Eichelman* and its predecessors because in those cases the claimants had not purchased UIM coverage on the vehicles that they owned. We conclude that this is a distinction without a difference. Although Appellee purchased UIM coverage for her own vehicle, she purchased it from Hanover, not Nationwide. She voluntarily chose Hanover as the insurance carrier for UIM coverage on her vehicle, and *she paid Hanover a premium for that UIM coverage.* The fact that she contracted with Hanover for UIM coverage on her vehicle has no impact on our analysis of whether Nationwide's exclusion for UIM coverage is valid. It was Hanover, not Nationwide, that received the premium for UIM coverage that covered Appellee's use of her vehicle. As this Court recently stated in

*McGovern v. Erie Insurance Group,* 796 A.2d 343 (Pa.Super.2002):

> This court has repeatedly denied UM or UIM coverage where a claimant is seeking a "free ride" from another person[']s insurance policy. In large part, these denials are based upon the notion that it is fundamentally unfair to require an insurer to provide coverage for a vehicle not specifically listed on a policy and for which no premium was paid. That rationale applies equally here.

*McGovern,* 796 A.2d at 346 (citations omitted). To state it simply, Appellee did not purchase insurance that extended UIM coverage to her vehicle from Nationwide and, therefore, she cannot now claim that she is entitled to those benefits.

¶ 20 Appellee also claims that enforcement of the household exclusion in this case impermissibly conflicts with a section of the MVFRL, namely 75 Pa.C.S. § 1733(a), which states:

> (a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 Pa.C.S. § 1733(a). Appellee argues that "[i]f Nationwide's exclusion as to [Appellee] is enforced, then the priority provision set forth above is rendered meaningless." Brief for Appellee at 13. We disagree. The foregoing provision would be applicable were Appellee to have been injured in a friend's car. In such a case, Nationwide's policy expressly provides UIM coverage to Appellee. Thus, the Nationwide policy would be in second priority for Appellee's recovery of benefits. Therefore, we conclude that the household

exclusion does not conflict with this provision of the MVFRL.

¶ 21 Based on our foregoing analysis, we conclude that enforcement of the household exclusion in the circumstances of this case, does not violate public policy. Accordingly, the trial court erred in determining that the household exclusion was not a valid bar to Appellee's claim for UIM benefits from Nationwide.

¶ 22 Order **REVERSED**.

¶ 23 President Judge DEL SOLE files a Dissenting Opinion. Judge FORD ELLIOTT joins.

DISSENTING OPINION BY DEL SOLE, P.J.

¶ 1 I disagree with the Majority's ruling in this matter and would conclude under the facts of this case that the household exclusion included in the Nationwide policy was not a valid bar to prevent Appellee from receiving UIM benefits under the Nationwide policy. I believe the Majority improperly relies upon prior decisions which were based upon significantly different factual scenarios.

¶ 2 The Majority finds that the question presented in this case is similar to that decided in *Old Guard Ins. Co. v. Houck,* 801 A.2d 559, 2002 PA Super 161. It further notes that *Old Guard* cited to prior decisions in *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994), *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998), *Hart v. Nationwide Ins. Co.* 541 Pa. 419, 663 A.2d 682 (1995) and *Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154 (1994). As further support for its ruling the Majority offers our Supreme Court's recent decision in *Burstein v. Prudential Property and Cas. Ins. Co.,* 801 A.2d 516 (Pa.2002). My review of these decisions finds that none has

a factual background similar to that presented in the instant case.

¶ 3 These prior decisions each uphold a clear and unambiguous household exclusion to UIM coverage as valid. The validity of the exclusion in these cases was considered in circumstances where the plaintiff was either attempting to convert underinsured coverage into liability coverage, or where the plaintiff failed to purchase UIM coverage for the vehicle involved in the accident or failed to purchase it in the amount purchased for other vehicles in the household.

¶ 4 In *Old Guard*, the insured was in a collision while riding a motorcycle insured by Guide One Insurance with UIM coverage of $15,000. The insured received the policy limits from the tortfeasor's insurer. Thereafter the insured sought UIM coverage from Guide One and Old Guard Insurance Company through which she had insured three other vehicles owned by her and her husband with UIM coverage of $100,000 per person/$300,000 per accident. The household exclusion contained in the Old Guard policy was held enforceable. The court specifically noted that, although the insureds had purchased UIM coverage on the motorcycle, "they only purchased $15,000 in UIM coverage." The court remarked, "[w]ere we to accept Appellant's position, a family with multiple vehicles could insure one vehicle with one insurer for a high amount of UIM coverage and insure the remaining vehicles with another insurer for minimum UIM coverage, and yet still recover from the former insurer when the latter's benefits prove inadequate when an accident occurs." *Old Guard*, at ¶ 30.

¶ 5 As noted, *Old Guard* relied on our Supreme Court's decision in *Paylor*. Therein, a husband and wife were killed in a single car accident while traveling in a motor home owned by them and insured under a policy issued by Foremost Insurance Company. The administratrix of the wife's estate recovered the limits of liability coverage under the Foremost policy and then sought to recover UIM benefits under a policy issued by Hartford Insurance Company on three other cars owned by the couple. In upholding a family car exclusion in the Hartford policy the court remarked: "to permit decedent's estate to recover the underinsured coverage ... is to allow the named insured's estate to convert inexpensively purchased underinsured motorist coverage for the family cars into liability coverage on the motor home." *Paylor*, 640 A.2d at 1241.

¶ 6 In *Eichelman* the appellant was struck by a truck while riding his motorcycle. The motorcycle was insured by Aegis Security Insurance Company, but the policy did not include UIM coverage. After receiving the limits of liability benefits available under the truck owner's insurance, the appellant sought to collect UIM coverage under a Nationwide Insurance Company policy which contained a household exclusion, and which was issued to the appellant's mother and her husband, with whom he resided. The court noted that the appellant voluntarily chose not to purchase underinsured motorist coverage and therefore received reduced insurance premiums. The court held, "[t]hus, this Court concludes that giving effect to the 'household exclusion' in this case furthers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice." *Eichelman*, 711 A.2d at 1010.

¶ 7 Similarly, *Hart* involved a situation where the injured party was driving his own vehicle for which he had purchased insurance, but not UIM coverage, when he was struck by another driver. The injured party, who resided in a home with his daughter, collected the policy limits from

the other driver's insurance carrier and then sought UIM coverage under a separate policy of insurance issued to his daughter. The Supreme Court in a *per curiam* order reversed this Court's ruling which found the household exclusion in the daughter's policy void as against public policy. The Court cited to *Windrim* in its order. The driver in *Windrim* claimed that while he was driving his own uninsured vehicle it was struck by a hit-and-run driver. Windrim sought UIM coverage under a policy issued by Nationwide to his mother claiming he was an insured because he was a relative residing in his mother's household. The Court found the household exclusion contained in the Nationwide policy valid and enforceable, remarking that its "conclusion is bolstered by the fact that Windrim's argument, if accepted, would actually contravene the legislative intent behind the MVFRL by serving as a disincentive to insure vehicles." *Windrim*, 641 A.2d at 1158. The Court noted that if it were to rule otherwise, relatives living with an insured would be less inclined to purchase insurance for their vehicle and instead rely on coverage from their relative's insurance policy.

¶ 8 Finally, and most recently, the Supreme Court had occasion to again consider an exclusion in *Burstein*. Therein the injured parties were driving a company car, which did not have UIM coverage, when it was hit by a motorcycle. The motorcyclist's insurance company tendered the maximum amount payable under the liability limits of its policy, but the injured parties were not fully compensated so they sought to recover UIM benefits under a policy issued by Prudential on three vehicles which they owned. The Court upheld an exclusion for regularly used non-owned vehicles. The Court commented that Mrs. Burstein should have taken affirmative steps to determine whether the employer-provided vehicle had UIM coverage. If she did not wish to accept the risk of driving without UIM coverage, the Court advised that she could have negotiated with her employer for the purchase of such coverage, purchased it herself, or refused to drive the car.

¶ 9 In each of these cases the party seeking recovery of UIM benefits either elected to not purchase such benefits themselves, or purchased them in an amount less than that purchased for other vehicles they owned. The concern in these cases, that an individual will elect to forgo the purchase of UIM insurance for certain vehicles when they have UIM coverage on another household vehicle, does not hold true in this case. Ms. Rudloff had purchased liability, underinsured and uninsured motorist protection from Hanover Insurance Company with $100,000 limits to cover the car she owned and was operating at the time of the accident.

¶ 10 Ms. Rudloff collected both the policy limits from the tortfeasor and the UIM coverage from Hanover before she sought recovery of UIM benefits from Nationwide under a policy issued to her father, with the same $100,000 limits. Unlike the parties in the cases relied on by the Majority, Ms. Rudloff did not seek to escape the purchase of UIM coverage. She had purchased UIM coverage in the same amount as that purchased by her father under the Nationwide policy. It was only when the amounts tendered by the tortfeasor and her own UIM coverage were insufficient to compensate her that she turned to the Nationwide policy. In these circumstances, recovery of UIM benefits under the Nationwide policy is directed by the provisions of the MVFRL which provide under Priority of Recovery:

(a) General Rule—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the inured person is an insured.

75 Pa.C.S.A. § 1733. Absent application of the household exclusion, it is undisputed that Ms. Rudloff is entitled to UIM benefits under the Nationwide policy as a relative residing in her father's household. The General Assembly in 75 Pa.C.S.A. § 1733(a)(2) sought to offer protection to those such as Ms. Rudloff who seek recovery from a policy covering a motor vehicle not involved in the accident under which they are insured. The exclusion under the facts of this case should not operate to bar recovery contrary to the express provisions of the MVFRL.

¶ 11 Further, application of the exclusion in this case does not seek to protect against the same harms envisioned in the cases cited by the Majority. The injured party in this case did purchase UIM insurance. She purchased it in an amount equal to that purchased by her father in his policy with Nationwide. The stated public policy of reducing the increasing costs of insurance does not support enforcement of the exclusion under the present facts, where the party seeking UIM benefits did purchase it on her own vehicle and seeks to recover as an insured under her father's policy only after exhausting her own UIM coverage. The fact that Ms. Rudloff purchased coverage from Hanover, and her father from Nationwide, is likely not to have impacted on the overall costs of insurance. Had she too sought to purchase coverage from Nationwide, it is most likely the family would have been entitled to a discount as a reward for insuring all the family's cars with the same company.

¶ 12 Thus, I conclude the distinct facts of this case do not warrant application of the case law cited by the Majority. Ms.

Rudloff, as an insured under her father's policy, is entitled to UIM benefits and I believe the exclusionary language in the policy which seeks to prevent her from seeking these benefits violates the express terms of the MVFRL and should not be upheld.