NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,

v.

Clyda HARRIS.

Superior Court of Pennsylvania.

Argued Nov. 19, 2002.
Filed May 12, 2003.
Reargument Denied July 18, 2003.

Peter B. Skeel, Pittsburgh, for appellant.

William M. Radcliffe, Uniontown, for appellee.

BEFORE: FORD ELLIOTT, ORIE MELVIN, and GRACI, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 In this appeal, we are asked to decide whether the trial court erred when it granted summary judgment to Clyda Harris ("insured") and denied summary judgment to Nationwide Mutual Insurance Company ("insurer"). We are constrained to vacate the summary judgment entered in favor of insured and grant summary judgment in favor of insurer based on our supreme court's recent decisions in *Prudential Property & Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002); *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204 (2002); and this court's recent decisions in *Rudloff v. Nationwide Mutual Insurance Co.,* 806 A.2d 1270 (Pa.Super.2002) (*en banc*), appeal denied, 572 Pa. 758, 818 A.2d 505 (2003); and *Old Guard Ins. Co. v. Houck,* 801 A.2d 559 (Pa.Super.2002), appeal denied, 572 Pa. 82, 818 A.2d 505 (2003). A brief statement of the facts, which are not in dispute, follows.

¶ 2 On October 19, 1998, while driving her Volkswagen Jetta, insured was involved in an automobile accident with Timothy Foreman. Insured settled with Foreman's liability carrier for the limits of liability under his policy. Insured then filed a claim with her insurance carrier, Allstate, for UIM benefits under her insurance policy on the Jetta, and Allstate tendered the full amount of those benefits. Allstate also tendered the limits of UIM coverage under a policy insured's brother purchased on his car because insured resided in the same household as brother. Finally, insured, who also resided with her mother, sought UIM coverage under her mother's policy with insurer. Insurer denied coverage, however, based upon a "household" exclusion in the underinsured motorists section of the policy. That exclusion follows:

COVERAGE EXCLUSIONS

This coverage does not apply to:

. . . .

4. Bodily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

. . . .

Insurer's brief in support of motion for summary judgment, 7/23/01, R. at 16, Exhibit A.

¶ 3 Insurer then filed a declaratory judgment action, followed by a motion for summary judgment, and insured filed a cross-motion for summary judgment. By order entered December 6, 2001, the trial court, the Honorable John F. Wagner, Jr., denied insurer's motion and granted insured's motion, finding that the exclusion at issue is void as against "the MVFRL's intent behind underinsured motorist benefits[, which] is to protect innocent victims from underinsured motorists who cannot adequately compensate their victims for their injuries." (Trial court opinion, 12/6/01 at 10–11.) Insurer filed this timely appeal, in which it raises the following issues:

I. Whether the clear and unambiguous language of the provisions contained in the Nationwide Policy excludes [insured] from obtaining underinsured motorist coverage.

II. Whether the 'Household Exclusion' is contrary to public policy as applied to the facts of this case.

Appellant's brief at 4.

¶ 4 "Summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Harleysville Ins. Companies v. Aetna Cas. and Surety Ins. Co.*, 568 Pa. 255, 258, 795 A.2d 383, 385 (2002), citing *P.J.S. v. Penn. State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 176 (1999). "Interpretation of an insurance policy is a question of law that a court may resolve on a motion for summary judgment." *Id.*, citing *Harstead v. Diamond State Ins. Co.*, 555 Pa. 159, 162–163, 723 A.2d 179, 180 (1999). "A reviewing court may disturb the granting of summary judgment by the trial court only where there has been a clear abuse of discretion or an error of law." *Id.* (citation omitted). "As this case raises an error of law, our review is plenary." *Id.*, citing *Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

■■■ ¶ 5 As we have already indicated, both our supreme court and this court have very recently addressed the issue insurer raises in this case. According to these recent decisions, while " 'other public policies may underlie the MVFRL, the "legislative concern for the spiraling consumer costs of automobile insurance" is its dominant and overarching public policy.' " *Rudloff*, 806 A.2d at 1273, quoting *Burstein, supra* at 184 n. 3, 809 A.2d at 208 n. 3, quoting *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994). Thus, we are constrained to find trial court error in entering summary judgment in favor of insured based on a public policy of protecting innocent insureds from underinsured motorists.[1] According to the decisions we have cited, household exclusions such as the one at issue in this case do not

---

1. We note our agreement with the trial court, however, that the rationale underlying legislative concern for spiraling costs of automobile insurance must be that fewer drivers will purchase prohibitively expensive insurance, thereby leaving innocent motorists who are injured by these uninsured drivers without a source of compensation for their losses. We cannot envision a legislative concern for the spiraling costs of anything unless the public welfare were somehow impacted thereby.

violate public policy because they limit the risk an insurer underwrites to operation of the vehicle(s) insured under its policy, or to operation of vehicles members of the household do not own, a slight risk when compared with operating their own vehicles. *Rudloff,* 806 A.2d at 1275.

¶ 6 Insured argued in its motion for summary judgment, and also argues on appeal, however, that the household exclusion violates public policy because it conflicts with the express language of §§ 1733 and 1738 of the MVFRL, 75 Pa.C.S.A. §§ 1733, 1738. (Appellee's brief at 13–16.) The trial court noted that it did not address insured's argument regarding § 1738, having already found the household exclusion in violation of the intent behind the MVFRL. (Trial court opinion, 12/6/01 at 11.) We find that *Rudloff* controls the insured's argument regarding § 1733, which held that a household exclusion such as the one at issue here did not violate § 1733, which would be applicable under similar facts if the insured had been driving a friend's car rather than her own. *Rudloff,* 806 A.2d at 1277.

¶ 7 According to insured, however, no appellate court in Pennsylvania has heretofore addressed whether a household exclusion such as the one at issue in this case directly conflicts with § 1738 of the MVFRL. (Appellee's brief at 14.) That section provides:

§ 1738. **Stacking of uninsured and underinsured benefits and option to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured *under one or more policies* providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. *The limits of coverages available under this sub-*

*chapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.*

75 Pa.C.S.A. § 1738(a) (emphasis added). The remaining subsections of § 1738 allow a named insured who has insured more than one motor vehicle under a single policy to waive the stacked limits of coverage, providing that he or she do so in writing and that "[t]he premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage." 75 Pa.C.S.A. § 1738(b), (c), (d), (e); *In re Insurance Stacking Litigation ("Stacking Litigation"),* 754 A.2d 702, 708 (Pa.Super.2000) (finding that the legislature has circumscribed the class of named insureds to whom notice must be given and who may therefore waive stacking to those who purchased coverage for more than one vehicle under a single policy), *appeal denied sub nom. In re Leed,* 565 Pa. 673, 775 A.2d 807 (2001).

¶ 8 This court recently interpreted § 1738 in *McGovern v. Erie Insurance Group,* 796 A.2d 343 (Pa.Super.2002), *appeal denied,* 570 Pa. 699, 809 A.2d 904 (2002). In *McGovern,* McGovern resided with his mother, who had purchased insurance on her own vehicle from Erie Insurance Group ("Erie"), including $250,000/500,000 stacked UM/UIM benefits. *Id.* at 344. McGovern was considered an insured under the Erie policy both under its express terms as a resident relative of the named insured, and pursuant to 75 Pa.C.S.A. § 1702, which defines an insured as, *inter alia,* a spouse or other relative of the named insured residing in the household of the named insured. 75 Pa.C.S.A. § 1702(2)(i). *Id.* McGovern owned a motorcycle, which he insured with Progressive Insurance, and an automobile, which

he insured with TICO.[2] While riding his motorcycle, McGovern was seriously injured in an accident. The tortfeasor paid the limits of his or her liability insurance, after which McGovern's insurer, Progressive Insurance, offered $14,675 of the $15,000 UIM coverage available under the Progressive policy. McGovern then sought UIM coverage under his mother's policy with Erie, which tendered an additional $250,000 based on McGovern's status as a resident relative. *Id.*

¶ 9 Not satisfied, McGovern sought additional coverage from Erie, arguing that he should receive $250,000 for his mother's vehicle, plus $250,000 each for his motorcycle and his automobile, up to the value of the damages he suffered. *Id.* at 345. The trial court interpreted § 1738 to allow stacking of the $15,000 UIM coverage under the Progressive policy with the $250,000 available under the Erie policy and this court affirmed. *Id.* In so doing, this court opined:

> The statutory language of section 1738 is clear. The total amount of coverage available is the **sum** of the limits for each motor vehicle as to which the injured person is an insured. Thus, to determine the amount of coverage available in the current situation, one merely needs to add the applicable limits of available UIM coverages. Here, the coverages available are $15,000 from the Progressive policy and $250,000 from the Erie policy. This is a classic example of inter-policy stacking. This is exactly what the trial court ordered.

*Id.* (emphasis in original).

■ ¶ 10 This case, like *McGovern*, involves the issue of inter-policy stacking, a form of stacking § 1738 specifically re-

quires. In fact, an insured may not waive the right to *inter-policy* stacking; only *intra-policy* stacking may be waived.[3] We are hard-pressed to understand how an insurer can abrogate a statutorily created right, which only named insureds who have multiple vehicles insured under a single policy may waive, merely by adding an exclusion to the policy. As the *Stacking Litigation* court observed,

> [I]t appears that the legislature has expressed a clear preference in favor of stacking. *All those who are insured in Pennsylvania pay for this privilege, via increased rates for uninsured or underinsured motorist benefits,* except for those who are permitted to waive stacking under *section 1738(b)*. In this manner, the risk and cost associated with stacking is shared by all who purchase insurance, except for those who exercise their option to waive, and thereby helps to maintain premiums at a more affordable level.

*Stacking Litigation,* 754 A.2d at 709 (emphasis added). The *Stacking Litigation* court found support for its interpretation of § 1738 in its legislative history, noting that in discussing the effect of § 1738, Representative George Saurman stated, " 'You are allowed to stack, unless you say you do not want to, which means that you can add together the protection for each of your automobiles and collect totally on any one accident and all the ones who have only one car are going to subsidize that....' " *Id.,* quoting Legislative Journal of the House, Vol. I, No. 10 at 209 (February 7, 1990).

¶ 11 Thus, while it appears as if the legislature considered the "spiraling costs of insurance" when it enacted § 1738 to

---

**2.** The TICO policy was not at issue based upon an unchallenged exclusionary clause. *McGovern,* 796 A.2d at 344 n. 1.

**3.** We do not know whether the Erie policy at issue in *McGovern* included a household exclusion such as the one at issue in this case.

require stacking except under very limited circumstances, our supreme court's recent case law leaves little doubt as to the validity of household vehicle exclusions in the face of public policy challenges such as the one presented in this case. In *Colbert, supra,* our supreme court answered two questions on Petition for Certification of Questions of Law from the United States Court of Appeals for the Third Circuit.

¶ 12 The first question was whether the definition of an "insured" in the Prudential policy conflicted with the statutory definition of "insured" as set forth in the MVFRL, 75 Pa.C.S.A. § 1702. The Prudential policy limited "insureds" to resident relatives only when they were using a vehicle insured under the Prudential policy; § 1702, in contrast, defines "insured" as named insureds and any resident relatives of named insureds. *Colbert, supra* at 88, 813 A.2d at 750. Thus, the *Colbert* court found the Prudential definition in conflict with the MVFRL definition and therefore invalid. *Id.,* citing *Allwein v. Donegal Mut. Ins. Co.,* 448 Pa.Super. 364, 671 A.2d 744, 752 (1996) (*en banc*), (quoting George J. Couch, Couch on Insurance 2d (Rev.Ed. § 13.7 at 827 (1984)), and holding that "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws[ ]"), *appeal denied,* 546 Pa. 660, 685 A.2d 541 (1996).

¶ 13 The second question posed by the Third Circuit in *Colbert* queried whether the "other household vehicle" exclusion in the Prudential policy violated the public policy of the MVFRL as applied to Adam Colbert. Colbert, like Harris in this case, was injured while driving his car, on which he carried both UM and UIM coverage

under a policy with State Farm Insurance Company. Like Harris, Colbert settled his claim with the third party tortfeasor for the maximum amount of the tortfeasor's liability coverage. Colbert, like Harris, then recovered the maximum UIM coverage under his policy with State Farm.[4] Colbert, who, like Harris, lived with his parents at the time of the accident, then sought additional UIM benefits under his parents' policy with Prudential, which insured his parents' three automobiles for both UM and UIM coverage. Prudential denied coverage based in part on the "other household vehicle exclusion" in its policy. *Colbert, supra* at 90–93, 813 A.2d at 751–752.

¶ 14 In answer to the Third Circuit's second question, our supreme court upheld the "other household vehicle" exclusion because " 'voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure.' " *Id.* at 96, 813 A.2d at 754, quoting *Burstein, supra* at 185, 809 A.2d at 208.

■ ¶ 15 We are therefore constrained to reverse the trial court because we are bound by *Colbert, supra, Burstein, supra,* and *Rudloff, supra.* Following the analysis of *Colbert* and *Rudloff* in particular, it appears as if by inserting a household exclusion in a policy, an insurer can preclude stacking by otherwise covered insureds, the language of § 1738(a) notwithstanding. Like the majority in *Rudloff,* which found that the household exclusion did not violate § 1733 because the injured relative could stack UIM benefits if injured while driving a friend's car, we hold that the household exclusion in this case does not violate § 1738 because the in-

---

4. Colbert, unlike Harris, did not receive UIM benefits under a resident sibling's policy.

jured insured relative can stack UIM benefits in all cases except when driving his or her own car.

¶ 16 Summary judgment in favor of insured Clyda Harris is vacated; summary judgment is entered in favor of insurer Nationwide Mutual. Jurisdiction is relinquished.

¶ 17 ORIE MELVIN, J. files a Concurring Statement.

## CONCURRING STATEMENT BY ORIE MELVIN, J.:

¶ 1 I agree with the Majority that Appellant is entitled to summary judgment. I write separately only to emphasize that a household exclusion such as the one in the instant case does not violate public policy, because it permits an insurance company "to eliminate its exposure to an unknown factor." *Rudloff v. Nationwide Mutual Insurance Co.,* 806 A.2d 1270, 1275 (Pa.Super.2002). We explained in *Rudloff* that although an insurer contracts for the risk of providing UIM coverage to relatives of the named insured, "it [does] not contract for the far greater risk of providing UIM coverage to each relative in those relatives' regular use of the vehicles that they own." *Id.*

¶ 2 Thus, the focus must not be on whether the MVFRL makes provision for stacking of UIM benefits but rather on whether the insurance company is risks for required to underwrite which premiums had not been paid. *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204 (2002). It should be evident that a claimant may not stack benefits which he or she is not entitled to receive.