Karen O'CONNOR–KOHLER, Appellee

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant.

Karen O'Connor–Kohler, Appellant

v.

United Services Automobile Association, Appellee.

Superior Court of Pennsylvania.

Argued March 9, 2005.

Filed Sept. 12, 2005.

James W. Christie, III, Philadelphia, for United Services Automobile.

Amil M. Minora, Scranton, for O'Connor–Kohler.

Before: HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN and PANELLA, JJ.

JOYCE, J.

¶ 1 Appellant/Cross–Appellee, United Services Automobile Association ("USAA"), and Appellee/Cross–Appellant, Karen O'Connor–Kohler ("O'Connor–Koh- ler"), appeal from the May 9, 2003 order denying their respective motions to modify or correct the award issued following an underinsured motorists ("UIM") arbitra- tion. For the reasons set forth below, we affirm in part and reverse in part and remand these proceedings for entry of judgment in favor of O'Connor–Kohler in the amount of $500,000.

¶ 2 This action arose from an automobile accident that occurred on December 8, 2000. O'Connor–Kohler was a passenger in a Chevrolet Suburban operated by Mi- chael Fried, M.D. ("Fried"), and leased by his medical practice, Gastroenterology Consultants, Inc. O'Connor–Kohler sus- tained severe injuries to her lower extrem- ities when another vehicle crossed the cen- terline and struck the Suburban.

¶ 3 After exhausting the liability limits available under the policy insuring the ve- hicle responsible for the accident, O'Con- nor–Kohler submitted a UIM claim under Fried's personal automobile policy issued by USAA.[1] The USAA policy insured two vehicles, a 1992 Camry and a 1989 Mer- cedes, neither of which was involved in the accident. O'Connor–Kohler contended that she was a "covered person" under the terms of the USAA policy because the Suburban constituted a "temporary substi- tute vehicle" for the 1992 Camry, thereby entitling her to $2,000,000 in UIM benefits under the policy.[2] USAA denied the claim, asserting that the Suburban was not

---

1. The Suburban was listed as a covered vehi- cle under a policy issued by State Farm to Gastroenterology Consultants. O'Connor– Kohler pursued a claim against State Farm as well. Because we are not faced with any issue relative to the State Farm policy, we shall not consider any involvement by State Farm, other than to recognize that a claim was pursued, as evidenced by the non-prece- dential decision of the Third Circuit Court of Appeals in *O'Connor–Kohler v. State Farm In- surance Company*, No. 03–3961, 113 Fed. Appx. 472, 2004 WL 2404537 (3d. Cir. Oct. 27, 2004).

2. As will be discussed in greater detail below, the USAA policy provided stacked UIM cover- age on the two insured vehicles, with limits of $500,000 per person and $1,000,000 per acci- dent. O'Connor–Kohler claimed entitlement to $2,000,000 in UIM benefits, alleging that the ambiguous language of the USAA policy required that USAA pay the maximum possi- ble coverage available under the policy.

a substitute for the Camry, and that O'Connor–Kohler was not entitled to any UIM coverage available under the policy. Consequently, O'Connor–Kohler demanded arbitration.

¶ 4 Following the arbitration proceedings, the majority of the panel found that the Suburban was a temporary substitute vehicle for the Camry; that O'Connor–Kohler sustained damages in the amount of $4,500,000; and that O'Connor–Kohler was entitled to $1,000,000 in stacked UIM benefits under the ambiguous UIM provisions of the USAA policy, *i.e.*, the $500,000 per person limits times two, for the two vehicles insured under the policy.[3]

¶ 5 Both parties filed motions to modify or correct the award of the arbitrators, noting that the USAA policy invoked the Arbitration Act of 1927[4] for the purpose of determining the standard of review. That Act permitted a court to "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa. C.S. § 7302(d)(2). The trial court denied both parties' motions, and affirmed the arbitrators' decision and award in its entirety. This timely appeal and subsequent cross-appeal followed.

¶ 6 In a 2–1 decision, a panel of this Court reversed and remanded to the trial court for entry of judgment in favor of USAA. O'Connor–Kohler requested reargument, which was granted.

¶ 7 In this appeal, USAA contends that the trial court erred in failing to correct the arbitrators' conclusion that the Suburban was a "temporary substitute vehicle," and in failing to correct the conclusion that USAA's "Limit of Liability" provision was ambiguous, thereby allowing a class two insured to stack UIM coverage.[5] In her cross-appeal, O'Connor–Kohler claims that the trial court erred in failing to correct the arbitrators' refusal to expand the available UIM limits to $2,000,000.

¶ 8 We begin by setting forth our scope and standard of review. The interpretation of an insurance contract involves a question of law. Therefore, the scope of our review is plenary. *Travelers Casualty & Surety Company v. Castegnaro,* 565 Pa. 246, 251, 772 A.2d 456, 459 (2001). "When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Id.* (citations omitted). "When we

3. The dissenting arbitrator agreed that the Suburban was a temporary substitute vehicle for the Camry, but determined that O'Connor–Kohler sustained damages in the amount of $2,000,000 and should recover only the $500,000 non-stacked per person limits under the unambiguous UIM provisions of the USAA policy.

4. 5 P.S. §§ 161–181 (1927) (repealed). The Act of 1927 was repealed and replaced by the Uniform Arbitration Act of 1980, 42 Pa.C.S. §§ 7301–7320. However, in accordance with the Historical Note to 42 Pa.C.S. § 7302(d)(2), an agreement may be made for arbitration conducted pursuant to the Act of 1927. *See* 42 Pa.C.S. § 7302(d)(2).

5. We acknowledge *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), and its progeny, cases that based coverage decisions on an individual's status as a class one or class two insured. While we agree with USAA that, under those cases, O'Connor–Kohler would be a class two insured, it is not necessary for us to analyze this case in the context of "class one insured" vs. "class two insured." Rather, we can resolve the issues in this case by simply examining the contract language of the insurance policy.

review a trial court's decision to affirm, modify or vacate an arbitration award arising from an insurance contract, this Court may reverse only for an abuse of discretion or an error of law." *Rudloff v. Nationwide Mutual Insurance Company*, 806 A.2d 1270, 1272 (Pa.Super.2002).

¶ 9 Mindful of the applicable scope and standard of review, we first address the trial court's conclusion that the Suburban in which O'Connor–Kohler was a passenger constituted a "temporary substitute vehicle" under the USAA policy.

¶ 10 As defined in the USAA policy, a "temporary substitute vehicle means a vehicle or trailer not owned by you or a family member while used as a temporary substitute for your covered auto when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction." USAA Pennsylvania Auto Policy (7/94 ed.), page 3 of 18, Definition L. A "covered auto" means "[a]ny temporary substitute vehicle. Only those coverages provided for the vehicle withdrawn from normal use will be extended to its temporary substitute vehicle." *Id.*, Definition O(4).

¶ 11 USAA does not dispute that the Suburban was leased to Fried's medical practice and was not owned by Fried or a member of his family. However, USAA disputes the finding that the Suburban was being used as a temporary substitute for Fried's Camry (a "covered auto") and disputes that the Camry was withdrawn from use because of its breakdown, repair, servicing, loss or destruction. To analyze these issues, we must look to the events surrounding the use of the Suburban on the night of the accident.

¶ 12 Fried's medical practice leased three vehicles, one of which was the Suburban. The Suburban was available for use by both doctors in the practice as well as by their staff, with permission of the

doctors. The second vehicle was a BMW X–5, leased for Fried's use. A third vehicle was leased for use by Fried's practice partner. All three vehicles were insured under a policy issued by State Farm to Gastroenterology Consultants, Inc.

¶ 13 A week prior to the accident, the BMW X–5 was returned to the BMW dealership for replacement of its transmission. The vehicle remained unavailable for Fried's use until a week after the accident. According to Fried, while the BMW was in the shop, he drove the leased Suburban as well as the Camry that he owned and insured under the USAA policy.

¶ 14 On the day of the accident, Fried drove the Camry to his office. Because of concerns relating to the Camry's brakes and an inauspicious weather forecast, Fried drove the Suburban home from the office, picked up O'Connor–Kohler, and headed to his office Christmas party. The accident occurred at approximately 6:30 p.m., as he drove to the Christmas party.

¶ 15 During the arbitration proceedings, Fried and his daughter (the principal driver of the Camry when not away at school, as she was on the date of the accident) testified that the brakes on the Camry had been the source of concern during the years prior to the accident. They both testified that the Camry's brakes were serviced on numerous occasions prior to the date of the accident, and again within a few weeks after the accident, although they were not replaced until June of 2001. Fried contended that he withdrew the Camry from normal use and drove the Suburban in its place on the night of the accident because the brakes required servicing, especially in terms of the threatened snowfall that evening.

¶ 16 The trial court noted that the term "servicing" could mean customary preventive maintenance. The court further noted

that the USAA policy does not dictate who can withdraw a vehicle from normal use or under what circumstances it can be withdrawn. Noting its standard of review under 42 Pa.C.S. § 7302(d)(2), applying the standard for judgment *non obstante verdicto* and allowing the court to modify or correct an award that is contrary to law, the court found no error in the arbitration panel's conclusion that the Suburban was a "covered auto," as a temporary substitute vehicle, thereby qualifying O'Connor–Kohler as a "covered person" under the USAA policy, as an occupant of the Suburban.[6] Finding no abuse of discretion or error of law, we affirm that holding.

■ ¶ 17 O'Connor–Kohler's status as a covered person entitles her to UIM benefits, because the available bodily injury liability limits from the responsible driver's policy were insufficient to compensate her for her damages. The remaining two issues involve the amount of coverage to which she is entitled.

¶ 18 The declarations page for the policy indicates that Fried purchased stacked coverage for two vehicles, with limits of $500,000 per person and $1,000,000 per accident. The coverage provisions, including a section entitled "Limit of Liability," are set forth in Part C of the policy, *i.e.,* the UM Coverage and UIM Coverage parts. Part C(A.) of the policy provides:

If bodily injury is sustained in an accident by you or any family member:[7]

1. Our maximum limit of liability for all resulting damages ... arising out of bodily injury sustained by one person in any such accident is the sum of the limits of liability shown on the Declarations for "each person" for [UIM] Coverage;

2. Subject to the maximum limit for each person described in A. above, our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown on the Declarations for "each accident" for [UIM] Coverage;

3. Subject to the maximum limits of liability set forth in 1. and 2. above:

(a.) **the most we will pay for bodily injury sustained in such accident** *by a covered person other than you or any family member* **is that covered person's pro-rata share of the "each person" or "each accident" limit of liability shown on the Declarations applicable to the vehicle that covered person was occupying at the time of the accident;** and

(b.) you or any family member who sustains bodily injury in such accident will also be entitled to a pro-rata share of the "each person" or "each accident" limit described in paragraph 3(a) above.

A person's pro-rata share shall be the proportion that that person's damages bears to the total damages sustained by all covered persons.

The maximum limit of liability is the most we will pay regardless of the number of:

1. Covered Persons;

---

6. It was conceded by Fried and O'Connor–Kohler that O'Connor–Kohler was neither a named insured under the USAA policy nor a family member, *i.e.,* a person related to the named insured by blood, marriage, or adoption. Her status as a covered person is strictly based on the policy definition of "covered person" that includes "any other person occupying your covered auto."

7. Fried, the named insured under the policy, was also injured in the accident. The record is silent as to whether Fried submitted a UIM claim to USAA.

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the accident.

USAA Pennsylvania Auto Policy (7/94 ed.), page 12 of 18 (emphasis added).

¶ 19 The arbitrators concluded that ambiguities in the above-quoted Limit of Liability language should be construed in favor of O'Connor–Kohler to allow stacking of UIM coverage and a resulting recovery of $1,000,000, *i.e.*, the per person limits of $500,000 times two, the number of vehicles insured under the policy. However, the arbitrators did not identify the precise part or parts of the language they found ambiguous. The trial court, on the other hand, stated that, "[w]hen reading the limits of liability section of the subject Policy, there does appear to be conflicts in terms, which can, in fact, lead to confusion and/or ambiguity." Trial Court Opinion, 5/9/03, at 11. The trial court continued by noting that, "[t]he confusion and conflicts set in when one references Section (A)(3)(a) and (b)" and that "the language in Section (A)(3) is nothing short of convoluted and defies a rational and common sense understanding of same." *Id.* at 13 and 15.

¶ 20 USAA contends that the trial court committed error of law by concluding that the above language is ambiguous, and by affirming the arbitrators' determination in that regard. Finding no ambiguity in the language of Part C(A.)(3), we agree with USAA.

¶ 21 Parts C (A.)(1) and (2) define the absolute maximum UIM benefits available under any circumstance in which a named insured or a family member is injured. Again, Fried (the "named insured") was injured in the accident. Consequently, under the USAA policy, the maximum UIM benefits were $1,000,000 per person and $2,000,000 per accident, reflecting stacked limits elected by Fried. However, Part C(A.)(3) unambiguously states that a covered person, other than a named insured or a family member, is limited to the coverage "applicable to the vehicle that covered person was occupying at the time of the accident." As a "covered person" who is not a named insured or a family member, the most O'Connor–Kohler can recover under the USAA policy is the $500,000 UIM benefit applicable to the Suburban as a temporary substitute vehicle for the Camry.

¶ 22 "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." *Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982) (citation omitted). Further, as explained by this Court:

> Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. The polestar of our inquiry, therefore, is the language of the insurance policy. Additionally, an ambiguity does not exist simply because the parties disagree on the proper construction to be given a

particular policy provision. Courts should read policy provisions to avoid an ambiguity if possible.

*Neuhard v. Travelers,* 831 A.2d 602, 604–05 (Pa.Super.2003) (citations omitted).

¶ 23 We disagree with the trial court's conclusion that the language of Part C(A.)(3) is ambiguous. Further, we find that the trial court's determination constitutes error of law. Accordingly, we reverse that part of the trial court's order that authorized O'Connor–Kohler to stack UIM coverage under the USAA policy, and hold that O'Connor–Kohler is entitled to a maximum recovery of $500,000 in UIM benefits under the USAA policy.[8]

■ ¶ 24 Finally, O'Connor–Kohler argues that the ambiguity in the USAA policy entitles her to stacked "per accident" limits rather than "per person" limits of UIM coverage. As set forth above, we find that the language of Part C(A.)(3) is unambiguous. O'Connor–Kohler's recovery is limited to the "per person" limits for the vehicle in which she was a passenger. Therefore, even though we have reached our conclusion for reasons different from those stated by the trial court, we affirm the trial court's determination that coverage under the policy cannot be extended beyond the "per person" limits.[9] "The Superior Court may affirm the action of the trial court for reasons other than those given by the trial judge." *Jahanshahi v. Centura Development Company, Inc.,* 816 A.2d 1179, 1190, n. 3 (Pa.Super.2003) (quoting *Strickler v. Huffine,* 421 Pa.Super. 463, 618 A.2d 430, 436 (1992)).

¶ 25 We find no error of law or abuse of discretion in the trial court's holding that the Suburban qualifies as a temporary substitute vehicle under the USAA policy, thereby qualifying O'Connor–Kohler as a covered person eligible for UIM benefits under that policy. Consequently, we affirm that part of the trial court's order. Further, we find no error of law or abuse of discretion in the trial court's refusal to extend UIM benefits available to O'Connor–Kohler beyond the "per person" limits, and we affirm that part of the trial court's order as well. We do, however, find that the trial court committed error of law by adopting the arbitrators' conclusion that the language of the "Limit of Liability" section of the UIM provisions is ambiguous. Therefore, we reverse that part of the trial court's order finding that a perceived ambiguity entitled O'Connor–Kohler to stack UIM coverage and recover $1,000,000 under the USAA policy. O'Connor–Kohler is entitled to recover only the non-stacked per person UIM limits of $500,000.

¶ 26 Judgment affirmed in part and reversed in part. These proceedings are hereby remanded for entry of judgment in favor of O'Connor–Kohler in the amount of $500,000. Jurisdiction is relinquished.

¶ 27 GANTMAN, J. files a Dissenting Opinion, joined by BENDER, J. and BOWES, J.

GANTMAN, J., dissenting.

¶ 1 I wholeheartedly agree with the majority that paragraph (C) of the UIM Cov-

---

8. We note that UIM damages are calculated by first subtracting the applicable bodily injury liability limits from the total damages sustained by an injured person. In this case, there is no suggestion that awarding O'Connor–Kohler the full non-stacked per person limits would result in a total recovery in excess of the damages suffered.

9. The trial court held that the USAA policy language was ambiguous, but rejected as illogical O'Connor–Kohler's argument that an ambiguity mandated the payment of the maximum possible coverage available under the policy.

erage in USAA's policy is unambiguous; and, if the subject vehicle qualified as a "temporary substitute vehicle," the maximum recovery under the USAA policy would be $500,000.00. Under the circumstances of this case, however, I cannot agree that the Suburban qualified as a *bona fide* "temporary substitute vehicle" under the USAA policy. Hence, I dissent.

¶ 2 There are five vehicles implicated in this case. Three of them, including the Suburban, a BMW X–5 ("BMW"), and a vehicle leased for the use of Dr. Fried's practice partner, are insured under State Farm policies issued to the medical practice of Gastroenterology Consultants, Inc. USAA insured the other two vehicles, a 1992 Toyota Camry ("Camry") and a 1989 Mercedes, for Dr. Fried's personal use.

¶ 3 The USAA policy defines a "temporary substitute vehicle" as "a vehicle or trailer not owned by you or a family member while used as a temporary substitute for **your covered auto when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.**" USAA Pennsylvania Auto Policy, Definitions L., page 3 of 18. The Camry was a covered vehicle under the USAA policy. At the time of the accident, however, the Camry had not been withdrawn from normal use because of breakdown, repair, servicing, loss or destruction. To the contrary, Dr. Fried simply preferred to drive the Suburban instead of the Camry. Whereas the Suburban might have been a temporary substitute vehicle for the

BMW, which was in the shop for repairs, I think the Suburban was not a legal "temporary substitute vehicle" for the Camry. The Camry had not been withdrawn from normal use on the day of the accident for breakdown, repair, servicing, loss or destruction. In fact, the Camry was not garaged for repairs until weeks after the accident. Further, the allegedly problematic brakes on the Camry were not repaired until June 2001, approximately six months later. The Suburban did not qualify as a "temporary substitute vehicle" for the Camry, as defined in the USAA policy, because the Camry had not been "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Put simply, Dr. Fried's personal preference for driving the Suburban on the night of the accident, absent more, does not qualify the Suburban as a "temporary substitute vehicle" for the Camry under the USAA policy. Therefore, I conclude USAA was not obligated under the terms of its policy to provide underinsured motorist coverage for the accident involving the Suburban. Accordingly, I would vacate the trial court's order and remand for entry of judgment in favor of USAA. Hence, I dissent.[10]

10. I also note the trial court's order, entered May 9, 2003, denied the parties' respective motions to modify or correct the arbitration award and affirmed the award in its entirety. However, judgment was not entered on the award until June 9, 2003. *See Seay v. Prudential Property & Cas. Ins. Co.,* 375 Pa.Super. 37, 543 A.2d 1166 (1988), *appeal dismissed,* 523 Pa. 105, 565 A.2d 159 (1989)

(stating order confirming arbitration award as well as entry of judgment thereon in accordance with Section 7316 are prerequisites to appeal). *Compare Kemether v. Aetna Life & Cas. Co.,* 440 Pa.Super. 468, 656 A.2d 125 (1995) (acknowledging procedural irregularity but allowing appeal from judgment entered on order denying petition to vacate statutory

arbitration award, even though order **confirming** arbitration award was not entered). Regardless of the timing of this appeal when compared to the appropriate docket entries in the case, there appears to be no jurisdictional impediment to our review.