**Josephine GENERETTE, Appellant,**

v.

**DONEGAL MUTUAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 2005.

Filed Sept. 9, 2005.

Thomas P. Lang, York, for appellant.

Robert E. Kelly, Harrisburg, for appellee.

BEFORE: HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN and PANELLA, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Josephine Generette ("Generette"), appeals from the June 24, 2003 order issued by the Court of Common Pleas of York County, granting summary judgment in favor of Appellee, Donegal Mutual Insurance Company ("Donegal"). After careful review, we affirm.

¶ 2 Before us is another instance of an auto insurance consumer who makes a coverage decision that results in monetary savings, and then sues the carrier after being injured and realizing that more or better coverage would have been available absent that cost-saving decision. In this instance, the coverage decision was the waiver of stacking of underinsured motorist coverage ("UIM") in exchange for a premium reduction.

¶ 3 The facts of this case are not in dispute, as evidenced by the stipulation entered into between the parties on June 28, 2001. According to that stipulation, on December 6, 1982, Generette applied for a policy of private automobile insurance with Donegal. Her policy was issued in accordance with the then-applicable Pennsylvania No-fault Motor Vehicle Insurance Act ("No-fault Act"), 40 P.S. §§ 1009.101–

1009.701 (repealed).[1] Although the No-fault Act itself did not require uninsured motorist coverage ("UM"), that coverage was mandated by the Uninsured Motorist Act, 40 P.S. § 2000. Generette's policy issued on December 6, 1982, included UM coverage in the amount of $30,000 per accident.[2]

¶ 4 On October 1, 1984, the No-fault Act was supplanted by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701–1799.7. The MVFRL required that, upon the first renewal of an existing policy after October 1, 1984, UM and UIM coverages be provided in amounts equal to the bodily injury liability ("BI") limits, unless the insured elected to reduce the UM/UIM coverages to certain specified minimum amounts.

¶ 5 In accordance with the MVFRL, when Generette's policy renewed on December 6, 1984, it included UM/UIM coverages equal to her BI limits of $100,000 per accident. The coverages remained at that level until December 6, 1985, when Generette executed a proper waiver form requesting that her UM/UIM limits be reduced to $35,000 per accident. Generette received a premium reduction for electing lower limits.

¶ 6 With the enactment of Act 6 of 1990 ("Act 6") on July 1, 1990, certain sections of the MVFRL were amended, including §§ 1731, 1734, and 1738. As a result, insureds could waive UM/UIM coverages completely (§ 1731), elect limits of UM/UIM coverages in amounts lower than BI limits (§ 1734), and waive the right to stack UM/UIM coverages (§ 1738). For existing policies, the Act 6 amendments applied to the first renewal after July 1, 1990. For Generette, that first renewal took place on December 6, 1990. At that time, Generette and her husband elected non-stacked single limit UM/UIM coverages in the amount of $35,000 per accident. Generette's policy was renewed with the $35,000 non-stacked UM/UIM limits every six months from December 1990 through April 29, 1997, when she was injured in an automobile accident.[3]

¶ 7 Following the accident, Generette recovered the $25,000 BI limits from the policy insuring the party responsible for the accident. Pursuant to 75 Pa.C.S. § 1733,[4] she then presented a UIM claim to Nationwide, the carrier for the owner of the car in which she was a passenger at the time of the accident. Nationwide tendered its $50,000 UIM limits. Generette then submitted a claim to her own carrier, Donegal, asserting entitlement to the

---

1. At the time of the original issuance of the policy, Generette was Josephine Ausby. She married Ervin Generette on August 23, 1988, and her husband was added as a named insured at that time. For the sake of simplicity, we shall refer to Appellant as Generette, even in relation to time periods pre-dating her marriage.

2. The Uninsured Motorist Act did not require that insurers offer any amount of UIM, and the Donegal policy issued in 1982 did not provide that coverage to Generette.

3. Although not crucial to our discussion, we note that Generette added a second vehicle to the policy on January 3, 1992, and elected

$35,000 in non-stacked UM/UIM coverages on that vehicle as well. Effective December 6, 1992, one vehicle was removed from the policy. Non-stacked UM/UIM coverages of $35,000 continued in effect for the remaining vehicle.

4. Section 1733 sets forth the priority of recovery when more than one UM/UIM policy applies. The general rule in § 1733(a) directs that the first claim for UM/UIM benefits be made under the policy covering the vehicle occupied by the injured person at the time of the accident, and that any subsequent claim be made under a policy on a vehicle not involved in the accident with respect to which the injured person is an insured.

$35,000 in UIM coverage she purchased as "non-stacked" coverage.

¶ 8 Donegal denied Generette's claim, contending she was barred from recovery by virtue of the language contained in her non-stacked UIM endorsement. The UIM endorsement under the Donegal policy includes an "other insurance" clause that, consistent with § 1733, first directs the insured to the UIM coverage applicable to the vehicle occupied by the insured at the time of the accident ("First priority"). When that coverage has been exhausted, the insured may pursue recovery under the policy affording UIM coverage to the insured as a named insured or family member ("Second priority"). In this case, Generette did exhaust the limits of the First priority policy, *i.e.*, the Nationwide policy covering the vehicle in which she was a passenger. She then pursued the sole Second priority policy, *i.e.*, her own Donegal policy.

¶ 9 The Donegal policy restricts recovery in the Second priority to the amount by which the First priority recovery is exceeded by the greatest limit for any one vehicle under any one policy at the Second priority.[5] For example, had Generette's UIM coverage been $300,000, she would have been entitled to recover up to $250,000 in UIM benefits from Donegal, *i.e.*, Donegal's $300,000 less Nationwide's $50,000. But in this case, because the $50,000 (First priority) limits paid by Na-

tionwide exceeded the $35,000 (Second priority) limits elected by Generette under the Donegal policy, Generette was not entitled to any additional UIM benefits, in accordance with the language of her non-stacked UIM endorsement for which she received a reduced premium.

¶ 10 Generette pursued a declaratory judgment action against Donegal, asking the trial court to find that Donegal's "other insurance" clause was void as against public policy, and that Generette was entitled to UIM benefits in the amount of $100,000, the amount equal to her BI limits.[6] Generette subsequently filed a motion for summary judgment, which was denied. Donegal then filed its motion for summary judgment, which was granted by order entered on June 24, 2003. In the accompanying opinion, the Honorable Michael J. Brillhart noted that Generette "has never denied that she elected to waive stacking, nor has she challenged the process by which she waived stacking and we reject [Generette's] public policy challenge to her nonstacking policy." Trial Court Opinion, 6/24/03, at 12–13.

¶ 11 Generette filed a motion for reconsideration, asserting that she, as a single-vehicle owner, cannot waive inter-policy stacking under *Nationwide Mutual Insurance Company v. Harris,* 826 A.2d 880 (Pa.Super.2003), and *In re Stacking Litigation,* 754 A.2d 702 (Pa.Super.2000).[7]

---

**5.** The policy provides: "[t]he maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority."

**6.** In the proceedings before the trial court, Generette also challenged the reduction of UM/UIM limits she made in 1985, from an amount equal to her BI limits of $100,000, to the $35,000 UM/UIM limits in effect as of the

1997 accident date. She has not pursued that issue in this appeal.

**7.** As explained by the Insurance Commissioner, inter-policy stacking "utilizes a separate insurance policy as the source of benefits to combine with the injured person's coverage under his [own] policy. In this scenario, coverage limits contained in separate policies are available for cumulation in the event primary coverage is insufficient." *Leed v. Donegal Mutual Insurance Company,* Declaratory Opinion and Order, February 23, 1998, at 6. By contrast, intra-policy stacking involves

Following denial of the motion for reconsideration, Generette filed an appeal to this Court, raising one issue:

Is [Generette] entitled to underinsured motorist benefits because a named insured with one vehicle on her policy can not waive inter-policy stacking of underinsured motorist benefits?

¶ 12 A panel of this Court reversed by a 2–1 vote, with the majority finding that, under 75 Pa.C.S. § 1738, an insured cannot waive inter-policy stacking on a single-vehicle policy. Donegal sought reargument, which we granted.

■ ¶ 13 Our scope of review on appeal from the grant of summary judgment is plenary. Yet, in reviewing the grant of summary judgment, we should reverse the trial court only where it is established that the court committed an error of law or clearly abused its discretion. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).

¶ 14 Our examination of the stacking issue before us begins with a review of the applicable statutory provisions set forth in 75 Pa.C.S. § 1738.

### § 1738. Stacking of uninsured and underinsured benefits and option to waive

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of multiplying the limits of UM/UIM coverage under a single policy by the number of vehicles insured under that policy.

the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) **Forms.**—

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

.............................

Signature of First Named Insured

.............................

Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

.............................

Signature of First Named Insured

.............................

Date

(e) **Signature and date.**—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

¶ 15 Generette argues that the form prescribed by § 1738(d) states that the insured relinquishes only the right to stack coverages on a multi-car policy. In essence, Generette is suggesting that waiver of stacking is not an available option for policyholders who insure, as she does, a

single vehicle under their policies. However, that interpretation conflicts with the language of § 1738(b), which states that a named insured **may** waive stacking. Under § 1738(b), that option is not restricted to named insureds purchasing UM/UIM coverages for more than one vehicle under a policy.

¶ 16 Allowing a named insured with one vehicle the option to waive stacking is consistent with the language of § 1738, and § 1738(b) in particular, and the statute does not prohibit an insurer from offering that waiver. However, an affirmative offer of waiver to a single-vehicle owner is not mandatory, as it is with a named insured with multiple vehicles insured under one policy.[8]

¶ 17 The issue presented to this Court is whether Generette is entitled to stacked UIM benefits because, as she asserts, as a single-vehicle owner, she cannot waive inter-policy stacking. Generette contends that the answer to this inquiry is found in the language of § 1738(d), the waiver form adopted by our Legislature. The § 1738(d) form directs that the limits of available coverage "shall be reduced to the limits stated in the policy." However, the language of the waiver form, by itself, does not end the inquiry. It is also necessary to examine the language of the Donegal policy to ascertain the "limits stated in the policy" when an insured, such as Generette, elects the waiver of stacking on a policy insuring a single vehicle.

¶ 18 The pertinent language from Donegal's "Underinsured Motorists Coverage—Pennsylvania (Non–Stacked)" endorsement is:

OTHER INSURANCE

---

**8.** "Each named insured purchasing [UM/UIM] coverage for more than one vehicle under a policy **shall** be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b)." 75 Pa.C.S. § 1738(c) (emphasis added).

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

First   The [UIM] applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second   The policy affording [UIM] to the "insured" as a named insured· of family member.

   1. When there is applicable insurance available under the First priority:

     a. The limit of liability applicable to the vehicle the "insured" was "occupying," under the policy in the First priority, shall first be exhausted; and

     b. The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority.

¶ 19 In accordance with Donegal's policy, if Generette had been injured in her own vehicle, she would have simply presented a claim to Donegal for the $35,000 in UIM benefits available under her policy. However, she was injured while a passenger in a vehicle insured by Nationwide. Therefore, in accordance with § 1733 and the Donegal policy, she looked first to the Nationwide policy, and collected the $50,000 UIM limits available under that policy. After recovering more UIM coverage from Nationwide than she purchased under her own Donegal policy, she then turned to her policy, which included the non-stacked UIM coverage she elected.

¶ 20 As set forth above, Donegal's "other insurance" clause provides a formula for calculating UIM benefits when the insured has recovered benefits under a policy insuring a non-owned vehicle. Because she had recovered UIM benefits in an amount greater than the level of coverage she purchased from Donegal, Generette was not entitled to any additional recovery from Donegal under her policy's formula.[9]

¶ 21 Having concluded that the § 1738 waiver form reduces UIM coverage to the limits stated in the policy, and that the limits stated in Generette's policy are calculated in accordance with the "other insurance" language in her non-stacked UIM endorsement, our inquiry returns to the issue raised by Generette: whether an insured may waive stacking on a policy insuring a single vehicle. A review of existing case law reveals that while the waiver of stacking issue has been discussed in several cases in recent years, it has been discussed only in *dicta* addressing the legitimacy of waiving inter-policy stacking. The following overview of case law is offered to substantiate this assertion.

¶ 22 The first case to discuss waiver of inter-policy stacking was *In re Stacking Litigation ("Stacking Litigation")*, 754 A.2d 702 (Pa.Super.2000) (*en banc*). In the *Stacking Litigation* case, the issue was whether automobile insurance carriers could charge a "stacking" premium to insureds who owned just one vehicle.[10] We

---

**9.** Citing *Allwein v. Donegal Mutual Insurance Company*, 448 Pa.Super. 364, 671 A.2d 744 (1996), Generette suggests that enforcing Donegal's set-off clause converts UIM coverage into "gap" rather than "excess" coverage. Appellant's Substituted Brief for Reargument at 8. We dismiss this contention. "Gap" and "excess" relate to reducing, or not reducing, UIM coverage by the limits of available BI coverage.

**10.** Seven issues were presented by Appellants in the *Stacking Litigation* case. The issue addressed in the instant case, whether a sin-

noted with approval that the trial court referred the issue to the Insurance Commissioner, who concluded that charging a premium for stacking was lawful. Quoting *Donnelly v. Bauer*, 553 Pa. 596, 608, 720 A.2d 447, 453 (1998), we recognized that:

> Courts traditionally accord an interpretation of a statutory provision by an administrative agency charged with administering that statute some deference. However, the interpretation of a statute is a question of law for the Court to resolve and when the Court is convinced that the interpretative regulation adopted by the administrative agency is clearly erroneous or is violative of legislative intent, the Court disregards the administrative agency's interpretation.

*Stacking Litigation*, 754 A.2d at 706. *See also Allstate Insurance Company v. Seelye*, 846 A.2d 1286, 1289 (Pa.Super.2004) (citing *Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 752 A.2d 878 (2000) (finding that the Insurance Department's interpretation of language of the MVFRL should be accepted as valid if not fraudulent, in bad faith, clearly arbitrary, or an abuse of discretion)).

¶ 23 Having determined that the insurance premium issue referred to the Commissioner in the *Stacking Litigation* case was one within her area of peculiar expertise, we turned to the interpretation and application of the provisions of § 1738. We noted that "[a]ll of Appellants' causes of action were premised upon their belief that Appellees' conduct violates section 1738 by charging Appellants a premium

for an illusory benefit and in failing to inform them of the opportunity to waive stacking." *Id.* at 709. We then pointed out the fallacy of the "illusory benefit" argument by explaining that single-vehicle owners who elected, and paid for, stacking could potentially stack their coverage with the coverage on another vehicle through inter-policy stacking, thereby reaping a benefit from their payment of "stacked" premiums. *Id.* at 709–10.

¶ 24 In the *Stacking Litigation* case, we also offered our opinion that subsections (b), (c) and (d) of § 1738, construed together, limit the § 1738(b) waiver of stacking option to those named insureds who purchase UM/UIM coverages for more than one vehicle. *Id.* at 708. However, determining the validity of a waiver of stacking on a single-vehicle policy was not necessary for the Court's decision. Therefore, our pronouncement in the *Stacking Litigation* case, addressing the waiver of stacking, constitutes *obiter dicta* and is not binding. *See Hunsberger v. Bender*, 407 Pa. 185, 188, 180 A.2d 4, 6 (1962) (statement in prior opinion, which clearly was not decisional but merely *dicta*, "is not binding upon us").[11]

¶ 25 In *McGovern v. Erie Insurance Group*, 796 A.2d 343 (Pa.Super.2002), this Court discussed stacking under § 1738, but in a different context. In that case, the injured motorist, McGovern, collected the BI limits from the negligent driver, and then UIM coverage from his own policy covering the motorcycle he was riding when he was injured.[12] McGovern then

---

gle-vehicle owner could waive stacking of UM/UIM coverages, was not among them.

**11.** Even though the waiver of stacking discussion in the *Stacking Litigation* case was *dicta*, we are constrained to note that, in retrospect, our analysis would impose a limitation on the language of § 1738(b), which allows a named

insured to waive stacking. The Legislature did not impose any such restriction.

**12.** McGovern's motorcycle was insured by Progressive under a policy that provided $15,000 in UIM coverage. McGovern also owned an automobile insured by TICO. No UIM benefits were paid by TICO due to the

turned to Erie for UIM coverage under a policy issued to his mother, with whom he lived. Erie paid its UIM limits, but refused to honor McGovern's request for stacked limits under the policy. However, the refusal was not based on a waiver of stacking. In fact, both McGovern and his mother had elected stacking of UM/UIM coverages under their respective single-vehicle policies. Instead, Erie's refusal was based on the fact McGovern was trying to apply Erie's limits of coverage to his motorcycle and his automobile, both of which were insured under separate policies issued by companies other than Erie. This Court affirmed the trial court's determination that McGovern could not use § 1738's stacking language to extend Erie's coverage to vehicles not insured by Erie.

¶ 26 In *Nationwide Mutual Insurance Company v. Harris*, 826 A.2d 880 (Pa.Super.2003), this Court considered whether a "household exclusion" clause could operate to preclude recovery of UIM benefits. In that case, Harris was injured while operating her own vehicle. At the time, she resided with a brother and her mother. Harris first recovered the BI limits from the policy insuring the negligent driver. She next recovered UIM benefits under her own Allstate policy, as well as UIM benefits under an Allstate policy issued to her brother. She then presented a claim to Nationwide, her mother's carrier. Nationwide denied coverage based on its "household exclusion." [13]

¶ 27 The opinion in the *Harris* case is silent as to whether Harris had elected to waive stacking of UM/UIM benefits. Waiver was not the issue; validity of the

household exclusion was the issue. Nevertheless, the Court stated, "[t]his case, like *McGovern*, involves the issue of inter-policy stacking, a form of stacking § 1738 specifically requires. In fact, an insured may not waive the right to inter-policy stacking; only intra-policy stacking may be waived." *Id.* at 884. The Court did not include a direct citation to authority for its pronouncement that inter-policy stacking may not be waived. However, there is a notation that this Court held, in *Stacking Litigation, supra*, "that the legislature has circumscribed the class of named insureds to whom notice must be given and who may therefore waive stacking to those who purchased coverage for more than one vehicle under a single policy." *Id.* at 883 (citing *Stacking Litigation*, 754 A.2d at 708).

¶ 28 As noted previously, the issue in the *Stacking Litigation* case was whether insurance carriers could charge stacking premiums to insureds who owned one vehicle. Statements concerning limitations on stacking were *dicta*.

¶ 29 This Court next examined § 1738 in *State Farm Mutual Automobile Insurance Company v. Rizzo*, 835 A.2d 359 (Pa.Super.2003). In that declaratory judgment action, the parties presented stipulated facts to this Court in an appeal brought by the injured insured, Rizzo. After recovering the BI limits from the negligent driver, Rizzo received the UIM policy limits under the State Farm policy insuring her own vehicle. She then turned to the State Farm policy covering the vehicle owned by her father, with whom she resided. Both Rizzo and her father had waived stacking

application of an unchallenged exclusionary clause. *McGovern*, 796 A.2d at 344, n. 1.

**13.** Nationwide's policy directed, *inter alia,* that UIM coverage did not apply to "[b]odily

injury suffered while occupying a motor vehicle owned by you or a relative but not insured for [UIM] coverage under this policy." *Harris*, 826 A.2d at 882.

under their policies and had received a premium discount for doing so.

¶ 30 State Farm denied coverage under Rizzo's father's policy, claiming that its "other insurance clause" precluded coverage.[14] In a joint stipulation of facts presented to the trial court in State Farm's declaratory judgment action, the parties agreed that Rizzo would not be entitled to coverage under her father's policy, should the court determine that the "other insurance" clause was enforceable.

¶ 31 The trial court found in favor of State Farm, not on the basis of the "other insurance clause," but rather based on Rizzo's waiver of stacking pursuant to § 1738. On appeal, Rizzo raised several issues, including whether the trial court erred in failing to address the sole issue presented to that court, i.e., the validity of State Farm's "other insurance" clause; and whether the trial court erred in determining that a waiver of stacking under § 1738 operates to preclude inter-policy stacking of UIM benefits.

¶ 32 This Court reversed the trial court, citing reversible error based on the trial court's analysis of the stacking issue, and noting that this Court had recently discussed, in Stacking Litigation, supra, whether a single-vehicle owner could waive stacking of UM/UIM. Quoting dicta from Stacking Litigation, that "subsections (b), (c) and (d) [of § 1738] must be construed together such that only named insureds who purchase coverage for more than one vehicle under a policy may waive the stacking of uninsured or underinsured

benefits," this Court concluded that Rizzo and her father, each with just one vehicle, could not waive inter-policy stacking of UIM benefits. Rizzo, 835 A.2d at 363–64. And because, as State Farm had agreed by stipulation, the "other insurance" clause would not apply absent the Rizzos' waivers of stacking, and because the Court concluded—based on dicta from the Stacking Litigation case—that the Rizzos could not waive stacking under § 1738, the "other insurance" clause did not apply to the facts of the case. Therefore, Rizzo was permitted to pursue coverage under her father's policy.[15]

¶ 33 In the Rizzo opinion, the Court stated:

Applying the Stacking Litigation court's analysis to the facts of this case, we find that daughter and father could not waive stacking because neither insured more than one vehicle under a policy (intra-policy stacking); in fact, neither possessed more than one vehicle, the very situation the Stacking Litigation court addressed. See Nationwide Mut. Ins. Co. v. Harris, 826 A.2d 880, 883–884 (Pa.Super.2003) (interpreting the Stacking Litigation court's analysis of § 1738 and concluding that an insured may not waive the right to inter-policy stacking; only intra policy stacking may be waived). Thus, despite the fact that State Farm apparently reduced insureds' premiums for their purported "election" to waive stacking, their election was void ab initio because it con-

---

14. State Farm's "other insurance" clause mirrors the Donegal policy provision, providing in pertinent part: "The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority."

15. Having concluded that "other insurance" clause was inapplicable to the case, the Court stated, "we need not determine whether or under what circumstances it might be enforceable or unenforceable." Rizzo, 835 A.2d at 365.

flicted with the provisions of § 1738 as this court has interpreted it.

*Id.* at 364.

¶ 34 Again, the issue of the waiver of stacking was not before this Court in the *Stacking Litigation* case and was not necessary to the resolution of the issue facing the Court, *i.e.,* whether carriers could charge a premium for stacking of UM/UIM coverages on single-vehicle policies. Compounding the confusion here is the fact that this Court, in the *Harris* case, included the statement, ostensibly based on *Stacking Litigation dicta,* that "[i]n fact, an insured may not waive the right to inter-policy stacking; only intra-policy stacking may be waived." *Harris,* 826 A.2d at 884. Yet, the issue in the *Harris* case was the validity of Nationwide's household exclusion, not waiver of stacking. As a result, the above-quoted passage from the *Rizzo* case is purely *Harris dicta* based on *Stacking Litigation dicta.* "[M]ere repetition does not elevate *obiter dicta* to the level of binding precedent." *Commonwealth v. Singley,* 582 Pa. 5, 15, 868 A.2d 403, 409 (2005).[16]

¶ 35 In essence, what is found through this review of cases can best be described as "stacking of stacking *dicta.*" Clearly, a statement in a prior opinion that was merely *dicta,* including *dicta* based on prior *dicta,* is not binding on us. *Id.*

¶ 36 The interplay between § 1738 and the household exclusion was re-examined by this Court in *State Farm Fire and Casualty Company v. Craley,* 844 A.2d 573 (Pa.Super.2004), *appeal granted,* 580 Pa. 706, 860 A.2d 490 (2004).[17] In the *Craley* case, Jayneann Craley was killed in an accident caused by an uninsured driver. At the time, she was operating a vehicle that she owned and insured through State Farm. Her husband Randall also owned a vehicle insured under a separate policy issued by State Farm. Both policies included waivers of stacking, as well as household exclusions.

¶ 37 State Farm filed a declaratory judgment action, apparently having paid its UM limits under the policy issued to Jayneann, but having denied the claim made for UM benefits under her husband's policy. The trial court found in favor of the insured, holding that the stacking waivers and the household exclusions violated public policy. On appeal, this Court reversed, stating that:

> We agree that because these were two separate policies, resulting in "inter-policy" stacking, the stacking waiver is not valid. However, under recent case law, the household vehicle exclusion clause does not violate public policy and therefore State Farm is only liable under Jayneann's policy and need not pay under Randall's policy.

*Craley,* 844 A.2d at 573–74.

¶ 38 After deciding the case based on the household exclusion, the Court, in *dicta,* offered its analysis of the *Stacking Litigation* case and its progeny, and proposed an interpretation of § 1738 consistent with this opinion, concluding that § 1738(b) permits waiver of both intra-policy and inter-policy stacking. A concurring and dissenting opinion agreed with the result reached on the issue of the household exclusion, but dissented from what the author concluded was *dicta* relat-

---

**16.** We note that, even if the § 1738 waiver issue were deemed central to the resolution of the *Rizzo* case, or any other panel decision post-dating our *Stacking Litigation* decision, as the court sitting *en banc,* we are not bound to follow a Superior Court panel opinion. *See* *Neilson v. Nationwide Insurance Company,* 738 A.2d 490 (Pa.Super.1999).

**17.** The *Craley* case was argued before our Supreme Court on May 16, 2005.

ing to the validity of waivers of stacking. *Id.* at 575 (Bender, J., concurring and dissenting).

¶ 39 Returning to the case presently before this Court, it is first necessary to ascertain whether the validity of the waiver of stacking under single-vehicle policies has been squarely addressed by this Court in any context other than as *dicta.* As is apparent from the above overview, it has not. From the origins of the discussion in the *Stacking Litigation* case, through the most recent discussion in the *Craley* case, waiver of stacking under single-vehicle policies has not been an issue essential to the resolution of any case before this Court. Consequently, this Court's pronouncements on the issue to date must be categorized as non-binding, non-precedential *dicta.* *See Kane v. State Farm Fire & Casualty Company,* 841 A.2d 1038, 1048 (Pa.Super.2003).

¶ 40 While the waiver of stacking under single-vehicle policies has not been addressed by this Court other than in *dicta,* it was discussed by the Insurance Commissioner in the consolidated cases that were presented to this Court in the *Stacking Litigation* case. In *Leed v. Donegal Mutual Insurance Company,* Declaratory Opinion and Order, February 23, 1998, the Commissioner stated:

> A waiver option is allowed for named insureds in [§ 1738(b) ]. Waiver permits the named insured to refuse "stacking." In 75 Pa.C.S.A. § 1738(b), the statute unmistakably requires that "notwithstanding the provisions of subsection (a)," that the named insured may waive coverage which provides for stacking of uninsured or underinsured coverages. Just as the creation of stacking in subsection (a) does not utilize "inter-policy stacking" or "intra-policy stacking" labels, neither is the waiver option qualified as to any type of stacking.

*Id.* at 12. The Commissioner continued, stating:

> Subsection (b) allows all classes of policyholders to waive stacked UM/UIM coverage. However, the General Assembly reserved a separate waiver provision for the multiple vehicle owner by creating subsection (c), entitled "More than one vehicle." This subsection specifically requires that multivehicle policyholders be provided the opportunity to waive stacked limits of coverage. Subsection (d) supplies the form for this waiver. Subsections (c) and (d) are separate provisions for waiver by multiple vehicle policyholders of the stacked limits of coverage described in subsection (a).
>
> Evident from the above analysis of § 1738, and from the examination and approval of rates and policies for single vehicle (i.e., inter-policy) stacking, is that single vehicle policy stacking is still permissible after the Act 6 amendments to the Financial Responsibility Law. Stacking coverage may be waived by the named insured, whether under a multiple or single vehicle policy.

*Id.* at 13.

¶ 41 To reiterate what this Court recognized in the *Stacking Litigation* case:

> Courts traditionally accord an interpretation of a statutory provision by an administrative agency charged with administering that statute some deference. However, the interpretation of a statute is a question of law for the Court to resolve and when the Court is convinced that the interpretative regulation adopted by the administrative agency is clearly erroneous or is violative of legislative intent, the Court disregards the administrative agency's interpretation.

*Stacking Litigation,* 754 A.2d at 706 (quoting *Donnelly v. Bauer,* 553 Pa. 596, 608, 720 A.2d 447, 453 (1998)).

■ ¶ 42 We find with the Insurance Commissioner's conclusion, that both inter-policy and intra-policy stacking are permitted under § 1738, is neither erroneous nor violative of legislative intent. We also find that Generette elected the waiver of stacking of her UIM coverage and received a reduced premium as a result. We further conclude that the waiver is implemented through the "other insurance" language of Donegal's UIM endorsement, and that the endorsement restricts Generette's UIM recovery to the $50,000 coverage already paid to her under the Nationwide policy in accordance with § 1733.[18]

¶ 43 Because the applicable standard of review in this case is error of law or abuse of discretion, and because the trial court neither committed error of law nor abused its discretion by granting Donegal's motion for summary judgment, we affirm the order of that court.

¶ 44 Order affirmed.

¶ 45 FORD ELLIOTT, J. files a Dissenting Opinion, joined by BENDER, J., PANELLA, J., and GANTMAN, J. concurs with separate Dissenting Statement.

¶ 46 GANTMAN, J. files a Dissenting Statement.

DISSENTING OPINION BY FORD ELLIOTT, J.:

¶ 1 I respectfully dissent. I do so for two reasons. First, while I disagree with the majority's revisiting the principles expressed in *In Re Insurance Stacking Litigation* ("*Stacking Litigation* "), 754 A.2d 702 (Pa.Super.2000), *appeal denied sub nom. In re Leed,* 565 Pa. 673, 775 A.2d 807 (2001), I find no need to apply those principles in this case because stacking, as our legislature has defined that term by statute, has no application here. Additionally, within the context of § 1733, the language in the Donegal policy that restricts the receipt of UIM benefits to the maximum recovery of UIM benefits available on any vehicle, including the vehicle in which the insured was a passenger at the time of the accident, unequivocally violates our legislature's definition of an underinsured motor vehicle, set forth in § 1702 of the MVFRL.

¶ 2 Before reaching my analysis of this case, I express my dismay at the majority's disavowal of the principles enunciated in *Stacking Litigation, supra,* because not only do I find those principles to be correct but I also find them compelled by law. Additionally, while the inter/intra-policy stacking waiver analysis may or may not have been necessary to the resolution of

---

**18.** Although Generette is not entitled to recover any UIM benefits from Donegal under the facts of this case, the waiver of stacking does not foreclose the possibility of a single-vehicle owner recovering UIM benefits from his or her own policy when the owner is injured in a non-owned vehicle. Employing the same hypothetical set forth previously in this opinion, if the Nationwide policy provided UIM coverage in the amount of $50,000, and if Generette had purchased non-stacked coverage in the amount of $300,000, Generette would have been entitled to recover up to $250,000 in UIM benefits under her own policy (her $300,000 UIM limits, less the Nationwide $50,000 UIM limits). Stated another way, assuming the damages warrant the recovery, under no circumstance will the injured individual ever be prevented from recovering at least the level of coverage purchased from his or her carrier, even though part—or even all—of the recovery might be paid by another insurer. In this case, Generette actually recovered greater UIM benefits than she purchased, due to the fact that the Nationwide UIM limits were greater than the coverage she purchased from Donegal.

the *Stacking Litigation* case, that analysis was adopted and applied in reaching the decisions in both *State Farm Mut. Automobile Ins. Co. v. Rizzo,* 835 A.2d 359 (Pa.Super.2003), *appeal denied,* 578 Pa. 710, 853 A.2d 363 (2004); and *Nationwide Mut. Ins. Co. v. Harris,* 826 A.2d 880 (Pa.Super.2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (2004). Assuming, arguendo, that the stacking waiver analysis was dicta in *Stacking Litigation,* a point with which I do not agree, that analysis is now, nonetheless, valid precedent. As a matter of stare decisis, I note that our supreme court denied allocatur in both *Harris, supra* and *Rizzo, supra,* as well as in *Stacking Litigation, supra.* I would therefore suggest that the majority's concern about relying on what it perceives to be dicta in *Stacking Litigation* is now a moot point.

¶ 3 Turning to the majority's resolution of this case, I am constrained to disagree because I do not find that the facts of this case implicate "stacking" as our legislature has defined that concept in § 1738 of the MVFRL: rather, a proper analysis of the issue in this case falls squarely within the parameters of § 1733, Priority of recovery. This is not to say that the *generic* term "stacking" may not describe the priority of recovery under § 1733, as the Insurance Commissioner suggests. (Brief on Reargument of Amicus Curiae M. Diane Koken, Pennsylvania Insurance Commissioner ("Insurance Commissioner's Brief") at 6) (defining "Stacking" of coverages as "nothing more than a cumulation of coverages for a single injury. Stacked coverage combines the limits of available insurance coverages from more than one source.").

¶ 4 Our legislature has, however, delineated a more limited concept of stacking for purposes of Pennsylvania's MVFRL as follows:

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle *as to which the injured person is an insured.*

75 Pa.C.S.A. § 1738(a) (emphasis added).

¶ 5 The MVFRL provides the following definition of an insured:

**'Insured.'** Any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S.A. § 1702. Definitions.

¶ 6 Thus, in Pennsylvania, the concept of stacking applies only to *motor vehicles as to which the injured person is an insured,* where the definition of "insured" does not include passengers in non-owned vehicles. *See* 3 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance ("Widiss"), § 40.1, at 344 (revised 2d ed.2000) (observing, "When there is a question about the "stacking" of underinsured motorist insurance coverages, it is essential to consider several factors, including: (1) whether applicable legislation has been enacted in the relevant state addressing questions about "stacking"; (2) whether there are provisions specifying circumstances in which more than one underinsured motorist insurance policy

provides coverage; (3) whether there are ambiguities created by the coverage provisions about an insured right to "stack" coverages or whether individual coverage terms that preclude "stacking" are free of ambiguities; and (4) the applicable judicial precedents about "stacking".") (footnote omitted).

¶ 7 Addressing an argument very much like the one Donegal advances in this case regarding our deference to the Insurance Commissioner, an *en banc* panel of this court opined in *Allwein v. Donegal Mut. Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744 (1996) (*en banc*), *appeal denied*, 546 Pa. 660, 685 A.2d 541 (1996):

> Furthermore, while it is true, as [Donegal] argues, that the … language in its policy was approved by the Insurance Commissioner, we note that '[w]hen there is a question about the effect—if any—such a filing [of an insurance policy form with the Commissioner] has on an adjudication of questions involving the enforceability of coverage terms in an uninsured or underinsured motorist coverage, courts almost invariably conclude that the filings do not constitute the type of administrative regulation which justifies judicial deference to the decision of an administrative agency.'

*Id.* at 753, quoting Widiss, § 32.3, at 21.

¶ 8 Thus, despite the Insurance Commissioner's position, I must nonetheless turn to the rules of statutory construction, which guide any review of the sections of a statute. *L.S. v. Eschbach*, 583 Pa. 47, 53–54, 874 A.2d 1150, 1154 (2005), citing 1 Pa.C.S.A. § 1921. As the *Eschbach* court observed, " 'Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]' " *Eschbach, supra* at 55, 874 A.2d at 1155, quoting 1 Pa.C.S.A. § 1903(a). Continuing, our supreme court opined, "Moreover, 'unlike statutes specifi-

cally required to be construed strictly, the MVFRL is to be accorded a liberal construction, in favor of the insured.' " *Id.*, quoting *Hoffman v. Troncelliti*, 576 Pa. 504, 514–15, 839 A.2d 1013, 1019 (2003), citing 1 Pa.C.S.A. § 1921(c).

¶ 9 In this case, the majority would expand the definition of an "insured" to include individuals who fall within the rubric of § 1733(a)(1), which provides:

> **§ 1733. Priority of recovery.**
>
> (a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

*Id.* As suggested by the majority, because the injured passenger is entitled to UIM benefits under the policy covering the motor vehicle he or she occupied at the time of the accident, the injured person is an insured under that policy. By logical extension, therefore, the majority would find § 1738, which applies only to "the sum of the limits for each motor vehicle *as to which the injured person is an insured,*" relevant in a case such as this, where the insured has purportedly waived stacking within her own policy.

¶ 10 The legislature has, however, clearly defined who is an "insured," as set forth *supra.* That definition does not include those individuals who fall under the first priority for recovery of UIM benefits in § 1733(a), individuals who are injured while they are passengers in vehicles as to which they have neither the obligation nor the ability to purchase UIM coverage or, of more significance herein, to pay for or waive stacked UIM coverage.

¶ 11 Both our supreme court and this court, sitting *en banc,* have struck down an insurer's attempt to limit the definition of an insured in two recent decisions; *Pru-*

*dential Property & Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002); and *Richmond v. Prudential Property & Cas. Ins. Co.,* 856 A.2d 1260 (Pa.Super.2004) (*en banc*), *appeal denied,* 583 Pa. 664, 875 A.2d 1076 (2005). In *Colbert,* our supreme court opined, " 'As a general rule, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." ' " *Colbert, supra* at 88, 813 A.2d at 750, quoting *Allwein,* 671 A.2d at 752, quoting George J. Couch, Couch on Insurance 2d (Rev.ed) § 13.7, at 827 (1984); *accord Richmond,* 856 A.2d at 1267. Based on the foregoing, both the *Colbert* and *Richmond* courts invalidated a provision in Prudential's policy limiting the definition of an insured to individuals who were driving cars, not vehicles, and further limited coverage to cars specifically insured under the Prudential policy. *Colbert, supra* at 88–89, 813 A.2d at 751; *Richmond,* 856 A.2d at 1268.

¶ 12 Less recently, an *en banc* panel of this court, following supreme court precedent, held that a passenger in a vehicle, who is not specifically designated as an insured in a policy of insurance covering that vehicle and who has no contractual relationship with the insurer, but whose "claim to be an insured is solely predicated on his occupancy of the motor vehicle[,]" is not a class one insured. *State Farm Mut. Automobile Ins. Co. v. Broughton,* 423 Pa.Super. 519, 621 A.2d 654, 656 (1993) (*en banc*), *appeal granted,* 535 Pa. 638, 631 A.2d 1009 (1993), citing *Selected Risks Ins.*

*v. Thompson,* 520 Pa. 130, 552 A.2d 1382 (1989).[19]

¶ 13 The *Broughton* court grounded its analysis in our supreme court's delineation of class one, class two, and class three insureds in *Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). *Broughton,* 621 A.2d at 656. The Utica policy at issue in *Contrisciane* provided:

PERSONS COVERED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either,

(b) any other person while occupying an insured highway vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

*Contrisciane, supra* at 338, 473 A.2d at 1010, quoting Reproduced Record at 101a. As the supreme court continued, "These classifications are contained in most uninsured motorist policies, and have come to be described as 'class one'; 'class two;' [sic] and 'class three' coverage." *Id.* See *also* James R. Ronca, *et al.,* Pennsylvania Motor Vehicle Insurance, An Analysis of the Financial Responsibility Law § 9.1, at 147 (2nd ed.2002) (setting forth the three classes of coverage the *Contrisciane* court adopted).

¶ 14 In this case as in *Contrisciane,* "entitlement to coverage was predicated

**19.** The majority in *Broughton* relied on its reasoning in *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 621 A.2d 635 (1993) (*en banc*), *appeal denied,* 537 Pa. 651, 644 A.2d 736 (1994), decided four days earlier by the same *en banc* panel. *Broughton,* 621 A.2d at 655. While our supreme court denied allocatur in *Jeffrey* and apparently granted allocatur in *Broughton,* Shepard's does not reflect any further activity in *Broughton* but refers to *Jeffrey* as a connected case.

on [Contrisciane's] occupation of the vehicle at the time of the accident: a 'class two' type of coverage." *Contrisciane, supra* at 338, 473 A.2d at 1010. According to our supreme court, "A claimant whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage." *Id.* at 338–339, 473 A.2d at 1010–1011. As a result, because Contrisciane's entitlement to coverage under the Utica policy "arose from his temporary status as an occupant, rather than from his being a specifically intended beneficiary of the insurance policy[,]" Contrisciane's estate could not stack coverages applicable to a fleet of vehicles, one of which was the vehicle Contrisciane occupied when he was killed by an uninsured driver. *Id.* at 339, 473 A.2d at 1011.

¶ 15 Contrisiciane was however, an intended beneficiary of another policy, carried by his father and designating Contrisciane as a driver. Because Contrisciane was a class one insured as to that policy, the supreme court held his estate could stack coverage under that policy and extended "the right to stack coverages to all persons within the 'class one' category of 'insureds'." *Id.* at 340, 473 A.2d at 1011.

¶ 16 Applying the foregoing analysis to the facts herein, insured, falling within class two as a passenger, was not entitled to stack coverage under the policy covering the vehicle she occupied, but had a right to stack coverage under her policy with Donegal, subject to any waiver. The right to stack, with its accompanying right to waive stacking, comes in to play under § 1733(a), therefore, only when 75 Pa. C.S.A. § 1733(a)(2) triggers insured's contractual right to UIM coverage. Under the priority of recovery § 1733 establishes,

that right is triggered only when, having exhausted the benefits available under both the tortfeasor's bodily injury liability policy ("BI policy") and the vehicle owner's UIM coverage, if any, and still not having been fully compensated for her injuries, insured seeks benefits under her Donegal policy, "(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured." *Id.*

¶ 17 I recognize that both the supreme court and this court decided *Contrisciane* and its progeny under prior law, not under the MVFRL. The class one, class two, and class three analysis remains, however, the law of Pennsylvania. *See Bowdren v. Aetna,* 404 Pa.Super. 595, 591 A.2d 751, 754–755 (1991) (citing *Contrisciane* for the proposition that a claimant's right to stack uninsured coverage under the MVFRL differs according to his status as a claimant, setting forth the three classes of claimants), *appeal denied,* 529 Pa. 644, 602 A.2d 855 (1992).

¶ 18 I also recognize that in this case, Donegal is not arguing that insured may not stack coverage under the policy covering the vehicle she was occupying, as Donegal did not insure that vehicle. The *Contrisciane* court's analysis is, however, directly on point in limiting to class one insureds the right to stack coverage on policies as to which they are class one insureds, and, by logical extension, the right to waive stacking only with regard to those policies. That analysis is also directly at odds with Donegal's claim that insured is an "insured" for purposes of § 1738 pursuant to her status as the occupant of another's vehicle; the definition of "insured" in the MVFRL is identical to the *Contrisciane* court's definition of a class one insured and clearly does not include an individual such as insured whose only claim to insurance benefits pursuant to

§ 1733(a)(1) is based on her status as the occupant of a motor vehicle.

¶ 19 Furthermore, I realize that in this case, unlike *Colbert, supra,* and *Richmond, supra,* Donegal seeks to limit its insureds' coverage by expanding, rather than restricting, the definition of who is an insured. The result is, however, the same as in *Colbert* and *Richmond;* Donegal would preclude an individual such as insured in this case, who paid a premium for UIM coverage, from the benefit of her bargain by telling her she cannot "stack" her own UIM coverage pursuant to § 1733(a)(2) with the UIM benefits she received pursuant to § 1733(a)(1) pursuant to the policy on a vehicle in which she happened to be riding at the time of the accident.

¶ 20 By permitting Donegal to redefine "who is an insured," the majority thereby allows Donegal to expand the scope of § 1738 beyond the parameters our legislature established. As our supreme court held in *Colbert, supra,* insurance contract provisions that are in conflict with or repugnant to applicable statutory provisions must yield to the statutory provisions, which form a part of the contract. *Colbert, supra* at 88, 813 A.2d at 750 (citation omitted). By defining an "insured" in terms of class one insureds only, and by defining stacking as "the sum of the [UM or UIM] limits for each motor vehicle as to which the injured person is an insured," the legislature clearly intended that stacking, and, by logical extension, waiver of stacking, apply only to claimants seeking UM/

UIM benefits based on their status as class one insureds.

¶ 21 As Ronca, *et al.,* observe in the context of gap versus excess coverage, an insured may only waive coverage after being fully informed of the coverage available and knowingly, intelligently, and affirmatively choosing to waive that coverage. Ronca, *et al., supra,* § 10.4, at 162. In this case, insured chose, and paid for, UIM coverage. She ostensibly waived, and did not pay for, stacking. Nothing in her policy or in the waiver of stacking form she or her husband signed informed her that by waiving stacking, she was waiving the UIM coverage for which she was, at the same time, paying a higher premium.[20] She is not, however, seeking to stack UIM coverage. Rather, she is claiming the UIM benefits to which she is entitled as a class one insured pursuant to § 1733(a)(2).

¶ 22 Thus, this is not "another instance of an auto insurance consumer who makes a coverage decision that results in monetary savings, and then sues the carrier after ... realizing that more or better coverage would have been available absent that cost-saving decision." (Majority opinion at 267.) Rather, this is another instance of an auto insurance consumer who pays a higher premium for coverage she is not required by law to purchase, only to have her carrier deny that coverage when it is time to give the consumer the benefit of her bargain.

¶ 23 In this case, the insured was a passenger in a vehicle she neither owned nor, *a fortiori,* could insure. Neither the

---

**20.** The rejection of stacked underinsured coverage limits applicable herein reads:

> By signing this waiver, I am rejecting *stacked limits of underinsured motorist coverage* under the policy for myself and members of my household under which the limits of coverage available *would be the sum of limits for each motor vehicle insured under the policy.* Instead *the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.* I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

Stipulation of Facts with Exhibits at Exhibit J, R.R. at 199a (emphasis added).

tortfeasor's liability insurance nor the UIM insurance on the vehicle in which she was riding fully compensated her for her injuries. As a result, she sought compensation from her insurance carrier pursuant to her contract for UIM benefits. Insured was, therefore, entitled to UIM coverage pursuant to § 1731(c) of the MVFRL which requires: "(c) Underinsured motorist coverage.—Underinsured motorist coverage *shall* provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." *Id.* (emphasis added).

¶ 24 Because I reach the result that insured's waiver of stacking has no application in this case, I find it necessary to reach the issue whether the *en banc* panel's decision in *Allwein, supra,* invalidates the clause on which Donegal relied to deny insured coverage.

¶ 25 The majority is correct that this court decided *Allwein* in the context of a UIM claim where the tortfeasor's BI coverage did not fully compensate Allwein for the injuries that resulted in his death. Allwein, who resided with his parents at the time of his death, was a class one insured pursuant to his parents' policy with Donegal, which provided UIM benefits of $35,000 per vehicle on each of the three vehicles the policy covered, and which allowed stacking of those benefits,

for a total of $105,000. Allwein was riding his bicycle to work when the tortfeasors struck him; therefore, the priority established in § 1733(a) did not apply and Allwein's estate could only pursue UIM benefits pursuant to Allwein's parents' policy. The tortfeasors' policy paid its BI liability limits of $15,000, after which the estate sought $105,000 in UIM benefits. Relying on a "gap" clause in its policy, Donegal agreed to pay only $90,000, claiming the policy allowed it to offset its payment of UIM benefits by the amount the estate recovered in BI benefits.[21] *Allwein,* 671 A.2d at 745–746.

¶ 26 Following arbitration, Donegal appealed the arbitrators' award to the trial court, raising a single issue: " 'whether the cited language in Donegal's policy is valid or whether Donegal owes Allwein an additional $15,000 in underinsurance benefits.' " *Allwein,* 671 A.2d at 746, quoting trial court opinion, 7/25/94 at 3. "The trial court found the so-called 'gap' provision in Donegal's policy, ... which allowed Donegal to offset the underinsurance benefits payable to Allwein against liability payments received pursuant to the tortfeasors' separate policy, to be violative of the public policy of Pennsylvania." *Id.*

¶ 27 Donegal raised four issues on appeal to the *en banc* panel of this court, all framing questions of contract and statutory interpretation pursuant to public policy.[22] Beginning with Donegal's fourth issue, the *Allwein* court opined:

*Allwein,* 671 A.2d at 746 (citation omitted).

**21.** The clause provided:

    C. The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an 'insured's' attorney either directly or as part of the amount paid to the 'insured.' It also includes all sums paid for the same damages under Part A. of this policy.

**22.**

    A. Whether the 1990 amendment to Section 1731(a) of the MVFRL [Motor Vehicle Financial Responsibility Law], making underinsured motorist coverage optional, eliminates any argument that gap underinsured coverage violates public policy.

'Excess' underinsurance benefits are limited only by the victim's damages or the policy limits, whichever is smaller. As the trial court stated:

> Under excess coverage, the party at fault is underinsured when his liability limits are less than the insured victim's total damages. The tortfeasor's policy acts as primary coverage, and the insured victim's policy acts as secondary coverage. The victim recovers under the tortfeasor's policy up to the policy limits and then recovers under his own policy up to coverage limits or up to the total amount of damages, whichever is less.

*Id.* at 747, quoting trial court opinion, 7/25/94 at 4. As the *Allwein* court continued, " 'Under excess coverage, therefore, [Allwein] would be entitled to recover the full $105,000 of underinsurance benefits available under his policy, because the parties agree that the total amount of his damages exceeds the combined benefits available under both the tortfeasors' policy limits and [Allwein's] underinsurance benefits.' " *Id.,* quoting trial court opinion, 7/25/94 at 4.

¶ 28 Explaining the concept of gap insurance, the *Allwein* court observed:

> Under 'gap' insurance, on the other hand:
>
> > [T]he party at fault is underinsured when [his or her] liability limits are less than a specified policy limit of the insured victim. To determine the amount of the insured's underinsurance recovery, the recovery from the

tortfeasor's policy is deducted from the amount recoverable under the insured's [underinsurance] policy. The insured's recovery fills the gap between the two policies up to the total amount of damages suffered or [up to the] policy limits, whichever is less.

*Id.,* quoting trial court opinion, 7/25/94 at 4. Therefore, as the *Allwein* court explained, " 'As a result, [Allwein] would only be entitled to benefits in the amount of the 'gap' between the $15,000 of coverage under the tortfeasors' policy and the $105,000 limits of liability of underinsurance under his own policy; namely, $90,000.' " *Id.,* quoting trial court opinion, 7/25/94 at 4. Continuing, the *en banc* court observed, " 'Furthermore, under gap insurance, if a tortfeasor's liability coverage is greater than the underinsurance coverage carried by the victim, the victim would be entitled to zero underinsurance recovery, even where his or her damages are far in excess of the tortfeasor's liability limits.' " *Id.,* quoting trial court opinion, 7/25/94 at 4. The *Allwein* court offered the trial court's illustration of such a scenario:

> For example, in the instant case, if the tortfeasors had carried $150,000 of liability insurance instead of $15,000, and [Allwein's] damages were determined to be $500,000, [Allwein] would recover nothing from Donegal because Allwein's 'gap' underinsurance benefits of $105,000 would be less than the tortfeasors' liability coverage, so that there would be no gap to fill.

B. Whether vague notions of public policy can be used to invalidate unambiguous insurance policy provisions.

C. Whether an automobile insurance policy's 'gap' UIM [underinsured motorist] coverage is consistent with the express insurance cost reduction and coverage balancing public policy goals of MVFRL.

D. Whether the required 'offer' of underinsured motorist coverage under Section 1731(a) and the definition of 'underinsured motor vehicle' in Section 1702 prohibit gap underinsured motorist coverage under the MVFRL.

*Allwein,* 671 A.2d at 746–747.

*Allwein,* 671 A.2d at 747, quoting trial court opinion, 7/25/94 at 4.

¶ 29 In this case, Donegal does not question whether the tortfeasor was driving an underinsured motor vehicle, which the MVFRL defines as "A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S.A. § 1702. Instead, Donegal argues, and the majority agrees, that *Allwein* does not govern the gap provision in Donegal's UIM endorsement because coverage was not triggered by exhaustion of the tortfeasor's BI coverage, but was instead triggered only after both the tortfeasor's BI coverage **and** the UIM coverage on the vehicle insured occupied were exhausted, without having fully compensated the insured for her injuries.

¶ 30 Thus, Donegal claims its gap clause does not violate the clear mandate of § 1702 requiring excess, rather than gap, underinsured motorist insurance. In fact, Donegal claims in this case it is obligated to provide **no** UIM coverage based on the very scenario set forth *supra,* with one variation; it is the vehicle owner's UIM coverage, not the tortfeasor's BI coverage, that is greater than the insured's UIM coverage.

¶ 31 I find it instructive to set forth paragraph B of the "Limit of Liability" section relevant to insured's UIM coverage under the Donegal policy:

    B. The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an 'insured's' attorney either directly or as part of the amount paid to the 'insured.' It also includes all sums paid under Part A of this policy.

Stipulation, "Limit of Liability," R.R. at 338a–339a. This is the identical clause the *Allwein* court invalidated and belies the majority's suggestion that insured would have received the full $35,000 of UIM coverage she paid for upon receiving $25,000 in BI coverage from the tortfeasor. *See* Majority opinion at 11 (opining, "In accordance with Donegal's policy, if [insured] had been injured in her own vehicle, she would have simply presented a claim to Donegal for the $35,000 in UIM benefits available under her policy."). In fairness to Donegal, I recognize that the UIM endorsement in effect at the time of insured's injury on April 29, 1997 appears to bear a 1996 date and may, therefore, have predated *Allwein, supra,* which was filed February 20, 1996 and for which our supreme court denied allocatur November 13, 1996.

¶ 32 The clause at issue herein is part of the "Other Insurance" section, which follows the "Limit of Liability" section. That clause provides: "b. The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority **exceeds the limit applicable under the policy in the First priority.**" (Stipulation of Facts with Exhibits at Exhibit R, Underinsured Motorists Coverage—Pennsylvania (Non–Stacked) ("Stipulation"), "Other Insurance," R.R. at 339a) (emphasis added).

¶ 33 To the extent this clause is comprehensible, it contemplates the very limitations on coverage the *Allwein* court invalidated, holding, "For all of the foregoing reasons, we find that § 1702 clearly expresses the policy of this Commonwealth on the issue of 'excess' versus 'gap' coverage. Neither the insurer nor this court has the power to render this statutory enactment nugatory." *Allwein,* 671 A.2d at 758. Section 1702, defining an underinsured motor vehicle, is as applicable to this

case as it was to *Allwein,* as insured purchased UIM coverage specifically to protect her in the event she was involved in an accident with a vehicle "for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S.A. § 1702.

¶ 34 Interestingly, Donegal would have us allow it to eliminate its obligation to insured altogether under the facts herein or to offset its obligation to other insureds, because the priority of recovery set forth in § 1733(a) *reduces* Donegal's obligation to its insureds when they are occupying another vehicle carrying UIM coverage. As this court observed in *Allwein,* however:

> [U]nderinsurance coverage is always secondary, or excess, coverage by its very nature; the insurer pays nothing unless and until the tortfeasor's coverage is exhausted, and then only if damages exceed the tortfeasor's insurance limits. To put it another way, underinsurance coverage always carries with it a 'deductible' of at least the amount of coverage required by a state's financial responsibility law. In Pennsylvania, the MVFRL defines 'financial responsibility' as '[t]he ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident ....' 75 Pa.C.S.A. § 1702. As a result, the underinsured insurer pays nothing unless and until the tortfeasor's insurer or the tortfeasor has paid, minimally, $15,000.

*Allwein,* 671 A.2d at 757.

¶ 35 Here, the tortfeasor's insurer paid $25,000; Nationwide, insuring the vehicle insured occupied at the time of the accident, paid $50,000; and insured was still not fully compensated for her injuries. To allow Donegal, which has already had the advantage of a $75,000 "deductible," to deny insured any benefits under her $35,000 UIM endorsement, for which she paid an extra premium, is to exalt form over both substance and statute.

¶ 36 As our supreme court very recently opined, the legislative intent behind allowing insureds the option of purchasing, or waiving, benefits such as full tort, UM/UIM coverage, and stacking was to allow individuals to reduce their insurance premiums, thereby rendering insurance more affordable so that more Pennsylvania drivers would maintain financial responsibility. *Eschbach, supra* at 56–57, 874 A.2d at 1156. The majority's holding would appear to encourage the very mischief these options were intended to correct.

¶ 37 First, it expands a purported stacking waiver pursuant to § 1738 beyond anything either Donegal or insured contemplated, as the plain language of the waiver indicates, and holds that § 1738 applies to the priority of coverage under § 1733(a). By so holding, the majority eviscerates insured's contract for UIM benefits.

¶ 38 Second, the majority dismisses insured's argument that the clause in her UIM endorsement providing gap underinsurance violates the MVFRL by noting that the holding in *Allwein* is inapplicable to endorsements pursuant to § 1733. As a result, and despite *Allwein's* explicit holding with regard to § 1702, the majority allows Donegal to continue to underwrite gap coverage in Pennsylvania in a case such as this.

¶ 39 I agree with Justice Newman, writing for the majority in *Eschbach,* that to expand a waiver of coverage in a manner the legislature neither contemplated nor condoned is to encourage the very mischief the MVFRL was intended to correct. Such an expansion places Pennsylvania's drivers in an untenable position. If they

elect to purchase some optional coverage but waive other options in order to be able to afford insurance, they may discover they have lost the benefit of their bargained-for purchases when the insurer claims, and the courts agree, the waiver swallows the purchase. Drivers may, as the *Eschbach* court opined, therefore not purchase insurance because they cannot afford it without waiving some options, thereby resulting in more uninsured drivers. *Eschbach, supra* at 56–57, 874 A.2d at 1156. As Ronca, *et al.,* observed, our legislature enacted the MVFRL because spiraling insurance costs in Pennsylvania resulted in a "staggering" number of uninsured drivers on Pennsylvania's highways. Ronca, *et al., supra* at § 1.2 at 11.

¶ 40 Allowing insurers to deny insureds the benefit of their bargain, for which they have opted to pay an increased premium, renders hollow the purchase of UIM coverage, leaving victims of underinsured drivers uncompensated to the full extent of their injuries despite their option, unless they can afford and are willing to litigate their claims for years.[23]

¶ 41 For all of the foregoing reasons, I must respectfully dissent.

## DISSENTING STATEMENT BY GANTMAN, J.:

¶ 1 With all due respect, I disagree with the majority's disposition in this case. Instead, I concur in the dissenting opinion of my esteemed colleague Judge Ford Elliott that the facts of this case do not implicate "stacking" as the legislature has defined the concept. I see this case as a straightforward contract case in which the issue is whether Generette is entitled to the UIM

benefits she paid for under the Donegal policy. I further agree with the dissent that Generette is effectively being denied the benefit of her bargain, which renders virtually hollow her specific purchase of UIM benefits. Generette was injured in an automobile accident and was not compensated to the full extent of her injuries. Under the facts and circumstances of this case, I think she should be entitled to UIM benefits under the Donegal policy. Accordingly, I dissent.

---

**23.** Insured was injured in 1997. According to a chart Donegal's Personal Lines Auto Rate File Specialist prepared, insured saved $1 per year over an eight-year period by electing to waive stacking, thereby reducing her UIM premiums for that eight-year period from $32 to $24. (Stipulations, Exhibit Q, R.R. at 335a.)